972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven J. KENNEALY, Defendant-Appellant.
 No. 91-1979.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1992.
 
 Before RYAN, BOGGS and BATCHELDER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant Steven J. Kennealy appeals the sentence he received after pleading guilty to one count of counterfeiting, 18 U.S.C. § 471. He raises three issues on appeal:
 
 
 2
 1. Whether the district court erred by using the Guidelines to determine his sentence before determining whether mitigating circumstances precluded the application of the guideline appropriate for his crime?
 
 
 3
 2. Whether the district court erred by applying a specific offense characteristic that enhanced his offense level despite Kennealy's unsophisticated counterfeiting process and poor counterfeit bill quality?
 
 
 4
 3. Whether the district court erred by considering hearsay testimony during the sentencing hearing?
 
 
 5
 We conclude that Kennealy's sentence should be affirmed.
 
 I.
 
 6
 In January 1991, a federal grand jury indicted Kennealy on one count of counterfeiting currency, 18 U.S.C. § 471, and three counts of passing counterfeited currency, 18 U.S.C. § 472. In March 1991, Kennealy pleaded guilty to the single count of counterfeiting, and the government dismissed the other three counts.
 
 
 7
 In August 1991, the district court conducted a sentencing hearing and concluded that the applicable offense level was 15. The district court then granted Kennealy a two-level reduction for acceptance of responsibility, resulting in an offense level of 13. The court sentenced Kennealy to 13 months imprisonment and a $3000 fine. Kennealy timely appeals his sentence.
 
 II.
 
 8
 Appellate review of sentences under the Guidelines is governed by the due deference standard, and the appropriate standard of review varies depending on whether an issue is factual, legal, or mixed. United States v. Carroll, 893 F.2d 1502, 1505-06 (6th Cir.1990). We review a district court's findings of fact which underlie the application of a guideline provision for clear error. 18 U.S.C. § 3742(e); United States v. Perez, 871 F.2d 45, 47-48 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 A.
 Guideline Application
 
 9
 Kennealy argues that the guideline governing counterfeiting does not take into account the circumstances of his crime and that, therefore, the district court should not have applied the guideline at all. Kennealy contends that the district court reversed the sentencing sequence intended by Congress when the court determined the applicable guideline without first taking mitigating circumstances into account.
 
 
 10
 Kennealy relies on the panel's original holding in United States v. Davern, 937 F.2d 1041, vacated and rehearing en banc granted, 937 F.2d 1056 (6th Cir.1991). Under this interpretation, a sentencing court should, at the outset of the sentencing process, consider whether the case presents circumstances not adequately taken into account by the Guidelines. Only if the court determines that the Guidelines are applicable should it then use a particular guideline to determine the sentence. This reverses the present interpretation of the sentencing statute, under which the sentencing court applies the Guidelines first, pursuant to the nine-step sentencing procedure of § 1B1.1.
 
 
 11
 We are not persuaded by Kennealy. It is enough to say that this court, en banc, has vacated the Davern panel decision and is presently considering that case upon rehearing en banc. 937 F.2d at 1056. Instead, we rely on the relevant statute which clearly establishes that a court shall impose a sentence within the guideline range unless the court finds that there exists an aggravating or mitigating circumstance the Commission did not taken into consideration. 18 U.S.C. § 3553(b). However, before determining whether a circumstance was adequately taken into consideration, the court must first consider the Guidelines themselves. Id.
 
 
 12
 A sentencing court should initially determine the applicable guideline section and then, at the end of the nine-step procedure, consider whether there are grounds for departure. The district court followed the correct sequence when it sentenced Kennealy.
 
 B.
 Offense Level Determination
 
 13
 Kennealy argues that his offense level should not have been 15 but rather 9, because his counterfeiting process only involved photocopying and the bills were obviously counterfeit.
 
 
 14
 The base offense level for counterfeiting is 9. U.S.S.G. § 2B5.1(a). Nevertheless, the applicable guideline establishes a specific offense characteristic for defendants who produce, as opposed to merely pass, counterfeit items.
 
 
 15
 If the defendant manufactured or produced any counterfeit obligation or security of the United States ... and the offense level as determined above is less than 15, increase to 15.
 
 
 16
 U.S.S.G. § 2B5.1(b)(2). An application note, however, limits subsection (b)(2):
 
 
 17
 Subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny.
 
 
 18
 U.S.S.G. § 2B5.1, comment. (n.3). The district court concluded that Kennealy did not merely photocopy his bills, nor were the bills obviously counterfeit.
 
 
 19
 Kennealy produced his counterfeit bills on a Hamada 600 copier machine, a machine he used in his printing business. At the sentencing hearing, Kennealy contended that the Hamada uses the same process as a photocopier and thus he merely photocopied his counterfeit bills. In response, Secret Service Agent Mark Braun testified that the Hamada is unlike an office photocopier because it employs a multi-step process which utilizes permanent plates for different steps in the duplicating process. The government produced plates used by Kennealy at the hearing. Agent Braun testified that duplicating a $20 bill required running one plate, removing it and inserting another plate, and repeating this process. Thus it took three plates, and three separate runs, to duplicate the front of a $20 bill. Agent Braun also testified, however, that the Hamada process involves photocopying at the initial stage, because the Hamada uses light to burn the image of the bill onto a plate, similar to the process by which a standard photocopier uses light to burn an image onto a drum.
 
 
 20
 Kennealy also disputed the quality of the counterfeit bills. Kennealy attested that agents had told him that the quality of his bills were "well below average," and Agent Braun testified that other agents stated that the bills were of poor quality. Nevertheless, at his plea hearing, Kennealy testified that he successfully passed some of his counterfeit bills.
 
 
 21
 The district court held that Kennealy's actions were too sophisticated to fall within the application note but instead warranted the application of subsection (b)(2), thus yielding an offense level of 15. We conclude that the district court's factual findings were not clearly erroneous. The application note states that the production enhancement does not apply to defendants who "merely photocopy." Kennealy's process, while not as sophisticated as offset printing, went beyond merely photocopying. The production enhancement also does not apply if the bills are "unlikely to be accepted." Kennealy's product, the actual bills, while apparently poor by counterfeiting standards, were accepted by some businesses. The district court did not clearly err by determining an offense level of 15.
 
 C.
 Confrontation Clause
 
 22
 Kennealy observes that because the government did not produce the actual counterfeit bills at the sentencing hearing, the only evidence concerning their quality was the testimony of Agent Braun. Kennealy contends that consideration of this testimony violated the confrontation clause, although why that is so is never suggested.
 
 
 23
 Kennealy's argument is meritless. Most of Agent Braun's testimony was not hearsay--he simply described counterfeiting processes. To the extent Kennealy's argument might be construed as suggesting that there is a confrontation clause violation because Agent Braun's testimony included some hearsay, it is sufficient to say merely that the only hearsay was his testimony as to statements made by other agents describing the quality of the bills. This testimony was, however, elicited by defense counsel, and, understandably, no objection was made. Moreover, by failing to raise the hearsay issue below, Kennealy waived any objection he might have had save for plain error, of which there is none. United States v. Nagi, 947 F.2d 211, 214 (6th Cir.1991), cert. denied, 119 L.Ed.2d 220 (1992).
 
 III.
 
 24
 Kennealy's sentence is AFFIRMED.