**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Perry STANLEY, Defendant–Appellant.**

No. 93–3440.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 28, 1993.

Decided May 12, 1994.

Terry Lehmann, Office of the U.S. Atty., Cincinnati, OH (argued), Marcia J. Harris (briefed), Salvador A. Dominguez, Office of the U.S. Atty., Columbus, OH, for plaintiff-appellee.

David H. Bodiker (argued and briefed), Bodiker & Holland, Columbus, OH, for defendant-appellant.

Before: KENNEDY and BATCHELDER, Circuit Judges; and WILHOIT, District Judge.[*]

PER CURIAM.

Defendant Perry Stanley appeals the sentence he received after pleading guilty to one count of conspiracy in violation of 18 U.S.C. § 371 to counterfeit obligations of the United States in violation of 18 U.S.C. § 471 and to utter counterfeited Federal Reserve Notes of the United States in violation of 18 U.S.C. § 472. Stanley raises only one issue on appeal: whether the district court erred in refusing to apply Application Note 3 to § 2B5.1 of the Sentencing Guidelines in determining his adjusted offense level. We affirm.

Stanley and a co-defendant used a sophisticated $23,956.60 Panasonic FP–C1 laser color copier to manufacture counterfeit Federal Reserve Notes. Some $4700 of these notes were in fact passed in the community as currency. The district court determined a base offense level of 9 under § 2B5.1 of the Guidelines, "Offenses Involving Counterfeit Bearer Obligations of the United States," and, because the specific offense characteristic set out in § 2B5.1(b)(2) was applicable, an

adjusted offense level of 15. Granting Stanley a two-level reduction for acceptance of responsibility, the court sentenced him to twelve months incarceration and two years of supervised release. Stanley timely appealed the sentence, claiming that Application Note 3 to this Guidelines section explicitly exempts him from the specific offense characteristic used by the district court to increase the offense level.

Appellate review of sentences under the Sentencing Guidelines is governed by the due deference standard, and the appropriate standard of review depends upon whether an issue is a matter of fact, law, or mixed. *United States v. Carroll,* 893 F.2d 1502, 1505–1506 (6th Cir.1990). The district court's findings of fact which underlie the application of a guideline provision are reviewed for clear error. 18 U.S.C. § 3742(e); *United States v. Perez,* 871 F.2d 45, 47–48 (6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). We review *de novo* a sentencing court's interpretation of the Guidelines. *United States v. Watkins,* 994 F.2d 1192 (6th Cir.1993).

The specific offense characteristic set out in § 2B5.1(b)(2) which the district court found applicable to Stanley reads:

If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than 15, increase to 15.

Stanley argues that this offense characteristic specifically does not apply to him because of Application Note 3 to § 2B5.1, which reads:

Subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny.

Stanley claims that Application Note 3 must be read in the disjunctive; he would read it

---

[*] The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

requiring that subsection (b)(2) not apply to 1) persons who merely photocopy notes, regardless of their quality, or 2) to persons who otherwise produce items which are obviously counterfeit. Because the counterfeit notes which Stanley and his cohort manufactured and passed were produced on a laser copier, Stanley contends that he merely photocopied the notes and therefore, the plain language of the application note exempts him from the operation of subsection (b)(2). The district court, however, found that Stanley did not "merely photocopy" the notes and that, in any event, the notes had actually been passed as currency in the community and therefore they were not "unlikely to be accepted." The district court found that the application note did not exempt Stanley from the enhancement required by subsection (b)(2).

This court appeared to read the language of Application Note 3 to § 2B5.1 in the conjunctive in an unpublished opinion, *United States v. Kennealy*, No. 91–1979, 1992 WL 180178 (6th Cir. July 29, 1992), cited by both parties here. However, Kennealy did not explicitly raise that issue; he argued only that he had produced counterfeit bills by mere photocopying. We held that the defendant had done more than merely photocopy bills, noting that the "production enhancement also does not apply if the bills are 'unlikely to be accepted.'" *Id.* at *3. Kennealy's bills, however, had been accepted. For both of those reasons, we held that the application note did not exempt Kennealy from the specific offense conduct enhancement of the basic offense level. *Id.*

■ Stanley does not dispute that some of the notes which he produced were passed as

currency. He simply maintains that it is irrelevant. But we are not persuaded. It is clear to us that as a matter of syntax, Application Note 3's adjective clause "that are so obviously counterfeit ..." modifies both "notes" and "items." [1] Therefore, Stanley is not exempted from the operation of subsection (b)(2) even if the notes were merely photocopied unless they were so obviously counterfeit that they were unlikely to be accepted.[2] The district court's finding that the notes, a substantial number of which had been circulated, were not obviously counterfeit was not clearly erroneous. Having thus held, it is not necessary for us to address the district court's finding that Stanley did not merely photocopy the notes.

The sentence imposed by the district court is AFFIRMED.

---

1. We think that the defendant would adopt our syntactical interpretation of an identical construct if, for example, he were prosecuted for killing a pheasant in his back yard under a law which made it a crime to "kill pheasants or otherwise endanger wildlife that are located within a state park."

2. The other Circuits that have addressed this issue have reached the same conclusion. The Tenth Circuit has held that Application Note 3 does not exclude from subsection (b)(2) all persons who produce counterfeit notes by photocopying. *United States v. Bruning*, 914 F.2d 212, 213 (10th Cir.), *cert. denied*, 498 U.S. 990, 111

S.Ct. 531, 112 L.Ed.2d 541 (1990). A contrary reading "would protect even the most successful counterfeiters from the enhanced penalties of subsection (b)(2) based solely on the method of production, photocopying." *Id.* The court read Application Note 3 to exclude defendants who produce notes, by photocopying or other means, which are obviously counterfeit. *Id.* The Ninth Circuit adopted the reasoning and interpretation of Application Note 3 offered by the 10th Circuit in *Bruning* even though the defendant used a black and white copier. *United States v. Taylor*, 991 F.2d 533, 535 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 170, 126 L.Ed.2d 129 (1993).