61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerome Kevin SPARKS, Defendant-Appellant.
 No. 94-3873.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1995.
 
 Before: CONTIE, MILBURN and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Jerome Kevin Sparks, appeals the sentence he received after pleading guilty to counterfeiting obligations of the United States in violation of 18 U.S.C. Sec.471.
 
 I.
 
 2
 In August 1991, agents of the United States Secret Service became aware that counterfeit federal reserve notes were being passed in Columbus, Dayton, and Cincinnati, Ohio. In June 1993, the investigation focused on defendant Sparks based upon reports made by local businesses. Secret service agents initiated surveillance of defendant. On June 23, 1993, defendant was observed passing currency to a sales person employed by a Super Pet store in Dayton, Ohio. Immediately following the purchase, secret service agents recovered the note, which was determined to be counterfeit currency. Defendant was apprehended in the store parking lot a few minutes later. On June 24, 1993, defendant was arrested for passing a counterfeit United States fifty dollar bill the previous day.
 
 
 3
 On September 3, 1993, defendant pled guilty in the United States District Court for the Southern District of Ohio to a one-count bill of information, which charged him with counterfeiting the fifty dollar bill in violation of 18 U.S.C. Sec.471. A presentence report was filed to which defendant filed objections.
 
 
 4
 On February 18, 1994, a sentencing hearing was conducted. On March 22, 1994, the district court made a preliminary ruling that it intended to reject defendant's objections to the presentence report. However, the court sua sponte ordered that defendant be committed to the custody of the Attorney General for the purpose of conducting a psychiatric or psychological examination pursuant to 18 U.S.C. Sec.4244 as a basis for possibly making a downward departure in defendant's sentence if the examination indicated that defendant suffered from a diminished mental capacity at the time he committed the crime.
 
 
 5
 Pursuant to the court's order, defendant was evaluated at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, between April 13, 1994 and May 11, 1994. A report based on this evaluation was sent to the district court on June 23, 1994. On August 4, 1994, David F. Mrad, PhD, the psychologist who conducted defendant's evaluation, testified before the court during a telephone conference.
 
 
 6
 On August 8, 1994, the district court rejected defendant's objections to the presentence report and declined to depart downward from the United States Sentencing Guidelines based on diminished capacity. The district court sentenced defendant to a period of 18 months imprisonment, a $500 fine, a $50 special assessment, and a three-year period of supervised release. Defendant timely filed this notice of appeal.
 
 II.
 
 7
 We must first decide whether the district court erred in determining defendant's base offense level pursuant to U.S.S.G. Sec.2B5.1(b)(2).
 
 
 8
 Guideline Sec.2B5.1 provides that for counterfeiting violations, a base offense level of 9 should be enhanced to 15 if the following occurs:
 
 
 9
 If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than 15, increase to 15.
 
 
 10
 U.S.S.G. Sec.2B5.1(b)(2). Application Note 3 states that this enhancement does not apply to "persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." We review the district court's determination in this regard under a clearly erroneous standard. United States v. Perez, 871 F.2d 45, 47-48 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 
 11
 In the present case, the district court found that by a preponderance of the evidence, the counterfeit currency made by defendant was not so obviously counterfeit that the bills were unlikely to be accepted even if subjected to only minimal scrutiny. The district court also found that defendant's counterfeiting process was more involved than one in which genuine bills of currency were merely photocopied. Based on these two findings, the district court determined that defendant's base offense level for violating 18 U.S.C. Sec.471 was 15.
 
 
 12
 On appeal, defendant contends that the district court erred because the bills, even if subjected to only minimal scrutiny, were obviously counterfeit, and defendant's counterfeiting process merely involved the photocopying of genuine bills.
 
 
 13
 At the sentencing hearing, secret service agent Beckman described the procedures used by defendant to create counterfeit bills, indicating that defendant did more than merely photocopy genuine currency. Beckman testified that defendant's technique included a procedure whereby defendant photocopied authentic bills, mutilated the bills to obtain authentic pieces of bills, and then combined the authentic pieces with the photocopies and other authentic bills to create counterfeit currency. This testimony supports the district court's determination that defendant did not merely photocopy authentic bills to create counterfeit currency.
 
 
 14
 In United States v. Stanley, 23 F.3d 1084, 1086 (6th Cir. 1994), this court rejected a challenge by a defendant to his enhancement pursuant to Guideline Sec. 2B5.1. The defendant claimed that the quality issue was irrelevant if the counterfeiting was accomplished solely by photocopying. This court found this argument had no merit and held that the quality issue could also be applied to counterfeiters who merely photocopy. Therefore, even if defendant merely photocopied authentic currency, his sentence may also be enhanced to a level 15 if the bills were not "so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny."
 
 
 15
 Defendant argues that special agent Beckman testified about various deficiencies in the quality of the counterfeit bills, which indicated that the bills were obviously counterfeit and would not be accepted even if subjected to only minimal scrutiny. This argument has no merit. Agent Beckman concluded that defendant's counterfeiting was of medium quality. Although agent Beckman testified that the bills had deficiencies that made them readily identifiable as counterfeit upon examination by an experienced secret service agent, he did not state that the bills were unlikely to be accepted by the average person if subjected to only minimal scrutiny. Agent Beckman testified that 172 of defendant's counterfeit bills had been successfully passed, providing a factual basis for the determination that the bills were not so obviously counterfeit that they would not be accepted even if subjected to only minimal scrutiny.
 
 
 16
 Moreover, the district court examined several of the counterfeit bills which had been successfully passed by defendant. He concluded "the proof is in the pudding," indicating that after examining the bills, he did not find them "so obviously counterfeit that they are not likely to be accepted even if subjected to only minimal scrutiny." This factual determination of the district court is not clearly erroneous, and the district court is affirmed on this issue.
 
 III.
 
 17
 We must next decide whether the district court's refusal to depart downward from the guideline range based on diminished capacity pursuant to U.S.S.G. Sec. 5K2.13 is appealable.
 
 
 18
 The United States argues that this court does not have jurisdiction to hear this issue on appeal because it is well established that where the guideline range was properly computed and the district court was aware of its discretion to depart downward from the guideline range, the district court's decision not to depart downward is nonreviewable. United States v. Pickett, 941 F.2d 411, 417-18 (6th Cir. 1991); United States v. Davis, 919 F.2d 1181, 1187 (6th Cir. 1990). We agree.
 
 
 19
 In the present case, it is clear that the district court was aware of its discretion to depart downward from the guideline range based on defendant's alleged diminished capacity. The court sua sponte ordered that defendant be committed to the custody of the Attorney General for the purpose of conducting a psychiatric or psychological examination to see if a downward departure was warranted based on diminished mental capacity. After defendant was evaluated at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri for one month, the forensic report submitted to the court concluded that defendant did not "manifest a mental disorder that would require custody for care or treatment in a psychiatric hospital." Even though he suffered "a moderate degree of depression and dysthymia," he demonstrated "no impairment in day-to-day functioning as a result of these disorders." Depressive symptoms were not found to be "severe or debilitating."
 
 
 20
 In addition to this clinical evaluation, the author of the evaluation, Dr. Mrad, examined various mental health treatment records from Westchester Counseling Center, Westchester, Ohio, from September 1993 through March 1994 and correspondence from defendant's mental health treatment counselor to the pretrial services officer. Dr. Mrad testified in a telephone conversation to the district court that he was unable to "render an opinion, based upon the preponderance or greater weight of the evidence, that Mr. Sparks, at the time of the commission of his offense, was operating from significantly reduced mental capacity which contributed to the commission of the offense."
 
 
 21
 Because of the district court's examination of this report and Dr. Mrad's testimony, it is clear that the court was aware of its discretion to depart downward due to diminished capacity under U.S.S.G. Sec.5K2.13, but declined to do so. It is only in cases where the district court mistakenly believes that it is without judicial authority to depart downward that the failure to depart downward can be reviewed on appeal. United States v. Maddalena, 893 F.2d 815, 817-18 (6th Cir. 1989). Because the record in the present case unequivocally demonstrates that the district court was fully aware of its authority to depart downward, but determined instead that defendant failed to meet his burden in establishing that he suffered from diminished mental capacity, there is no basis for reviewing this issue on appeal. If the district court is aware of his discretion to depart, the decision not to depart downward is nonreviewable. United States v. Davis, 919 F.2d at 1187; United States v. Pickett, 941 F.2d at 417 (a court is never required to depart downward). For this reason the district court is affirmed on this issue.
 
 IV.
 
 22
 To conclude, the opinion of the district court is AFFIRMED.