**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 97-40998**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**WAYNE EDWIN BOLLMAN,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Eastern District of Texas**
_____

May 7, 1998

Before WIENER, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:

Wayne Edwin Bollman appeals the sentence imposed following his guilty plea conviction for counterfeiting United States currency. He contends that the district court erred by enhancing his sentence under U.S.S.G. § 2B5.1(b)(2), which provides for a base offense level increase for manufacturing or producing counterfeit items, or for possessing a counterfeiting device or materials used in counterfeiting. We **AFFIRM**.

I.

In May 1997, Bollman pleaded guilty to counterfeiting a $100 Federal Reserve Note, in violation of 18 U.S.C. § 471. Under the Sentencing Guidelines in effect at the time Bollman was sentenced in August 1997 (the 1995 Guidelines Manual), the base offense level

for a violation of 18 U.S.C. § 471 is 9.  U.S.S.G. § 2B5.1(a).  However, in the presentence report (PSR), the probation officer increased Bollman's base offense level to 15, pursuant to U.S.S.G. § 2B5.1(b)(2), because Bollman utilized a personal computer, color computer scanner, and special paper in order to illegally manufacture 221 counterfeit Federal Reserve Notes.

Section 2B5.1(b)(2) provides:

> If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than 15, increase to 15.

U.S.S.G. § 2B5.1(b)(2).  The commentary provides, however:

> Subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny.

U.S.S.G. § 2B5.1, comment. (n.3).  The background notes indicate that the enhancement is intended to punish defendants who produce, rather than merely pass, counterfeit money; and those who possess counterfeiting devices also receive a greater punishment because of the sophistication and planning involved in manufacturing counterfeit notes and because of the public policy of protecting the integrity of Government-issued notes.  U.S.S.G. § 2B5.1, comment. (backg'd).

Bollman objected to the enhancement of his offense level on the ground that the items he produced were so obviously counterfeit

that they were unlikely to be accepted, even if subjected to minimal scrutiny. In the addendum to the PSR, the probation officer, in response to Bollman's objection to the § 2B5.1(b)(2) enhancement, noted that a Secret Service Agent and an Assistant United States Attorney had advised him that the notes created by Bollman were "of a quality that would have passed the scrutiny of most people who are not trained to identify counterfeit Federal Reserve notes". The probation officer also recommended that the district court consider not only whether the $100 note that was the subject of Bollman's guilty plea was passable, but also other factors, including that: Bollman created an additional 220 notes; Bollman did not use a standard copy machine and copy paper, but instead used color-scanner and color-printer computer equipment, software, and special Japanese rice paper in an effort to create passable notes; and Bollman had advised a confidential informant that he was creating passable notes.

At the sentencing hearing, the district court examined a counterfeit note created by Bollman and found that it was not obviously counterfeit. Therefore, it overruled Bollman's objection, adopted the PSR's findings and conclusions, and sentenced Bollman to 41 months imprisonment.

## II.

Bollman contends that the district court erred by applying the § 2B5.1(b)(2) enhancement, because his method of production was tantamount to mere photocopying, and because the notes he produced

were so obviously counterfeit that they were unlikely to be accepted even if subjected to only minimal scrutiny.

### A.

Bollman maintains that the counterfeiting process he used consisted of unsophisticated techniques with his computer, tantamount to mere photocopying. He asserts that the enhancement was intended to apply to offenders who use much more sophisticated counterfeiting equipment, such as litho plates, printing blankets, maskings, printing presses, negatives, stones, or other printing or engraving paraphernalia.

Because Bollman did not present this objection to the enhancement in district court, we review it only for plain error. *See United States v. Ravitch*, 128 F.3d 865, 869 (5th Cir. 1997). To demonstrate plain error, Bollman must show clear or obvious error which affects his substantial rights; if he makes such a showing, we have the discretion to correct the error. *See United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995).

At the time Bollman was sentenced, there were no Fifth Circuit cases discussing whether § 2B5.1(b)(2) applies to cases involving unsophisticated counterfeiting methods and/or the relative sophistication of the use of computer scanning equipment as a counterfeiting method. However, in *United States v. Wyjack*, No. 97-50630, ___ F.3d ___ (5th Cir. 1998), rendered on the same day as the opinion in the case at hand, we interpreted § 2B5.1(b)(2) as providing for application of the enhancement to counterfeiters who

- 4 -

produce instruments by mere photocopying, *unless* the instruments produced are so obviously counterfeit that they are unlikely to be accepted after only minimal scrutiny. **Id**. at ___. Accordingly, even assuming that the counterfeiting techniques used by Bollman were tantamount to "mere photocopying", Bollman has not demonstrated error, plain or otherwise.

B.

Alternatively, Bollman contends that the notes he produced were not well-made and were obviously counterfeit, even with only minimal inspection. He points out that there is no evidence that the notes he produced were passed successfully. We did not reach this issue in **Wyjack**; instead, we remanded for resentencing because, in that case, the district court had not determined whether the counterfeit currency was so obviously counterfeit that it was unlikely to be accepted even if subjected to only minimal scrutiny. **Wyjack**, ___ F.3d at ___. Accordingly, our court has not addressed the appropriate standard of review for such a determination.

Bollman's contention is, essentially, that the district court erred by deciding that the note he created was not obviously counterfeit. Because such a decision depends upon an examination of the counterfeit item(s) in question and, in some cases, on the testimony of witnesses, as discussed *infra*, it is factual in nature. Therefore, consistent with the general rule that findings of fact at sentencing are reviewed only for clear error, *e.g.*, **United States v. Stevenson**, 126 F.3d 662, 664 (5th Cir. 1997), the

decision should be reviewed under the "clearly erroneous" standard. *See, e.g.*, **United States v. Miller**, 77 F.3d 71, 76-77 (4th Cir. 1996).

In **Wyjack** we stated that the district court,

> [i]n assessing the quality of the notes ... may wish to consider, if applicable and appropriate, some or all of the following factors ...:
>
> > (1) physical inspection during the trial or at the sentencing hearing; (2) whether the counterfeit notes were successfully passed; (3) the number of counterfeit notes successfully passed; (4) the proportion of the number of counterfeit notes successfully passed to the number of notes attempted to be passed; and (5) the testimony of a lay witness who accepted one or more of the counterfeit notes or an expert witness who testified as to the quality of the counterfeit notes.

**Wyjack**, ___ F.3d at ___ (quoting **Miller**, 77 F.3d at 76).

With respect to the first factor, the Government asserted in its sentencing memorandum that the district court should physically inspect all of the counterfeit Federal Reserve Notes created by Bollman, and that it would produce them for the court's inspection at the sentencing hearing. The transcript of the sentencing hearing does not indicate whether the Government did so. However, the record reflects that the district court, at the request of Bollman's counsel, examined a counterfeit note created by Bollman (presumably the $100 Federal Reserve Note that was the subject of the count to which Bollman pleaded guilty), and made the following findings:

- 6 -

> I, of course, tend to be very careless in my handling of money, but if someone tendered me this bill, I think I would have accepted it. I've compared it ... with a genuine twenty-dollar bill in my possession. I find -- it looks as if the imprinting on the face is what -- if there's anything, that gives it away, it's not quite as good as what is on the genuine bills.
>
> ....
>
> It appears that the matters that he had counterfeited that had not yet been passed, would to the ordinary person be the type of an obligation, Government obligation, that would have been accepted.

Regarding the second, third, and fourth factors, the Government did not present any evidence that any of the counterfeit Federal Reserve Notes produced by Bollman were passed, successfully or otherwise. And, as to the fifth factor, the Government asserted in its sentencing memorandum that a United States Secret Service Agent would be available to testify at the sentencing hearing regarding the quality of the notes; but no testimony was presented at that hearing.

In *Wyjack*, we stressed that no one factor should be dispositive; that a "far-reaching inquiry" was unnecessary; and that all that was required was "a common sense judgment" as to the quality of the notes. *Wyjack*, ___ F.3d at ___. The record reflects that the district court made such "a common sense judgment" in this case. Because the counterfeit note that the court examined during the sentencing hearing was not introduced into evidence, and thus is not a part of the record on appeal, we are not able to examine it. On the other hand, it is, of course,

- 7 -

the appellant's duty to ensure that the record contains the evidence relevant to a finding or conclusion that the appellant urges is unsupported by, or contrary to, the evidence. *See* FED. R. APP. P. 10(b)(2); **Coats v. Pierre**, 890 F.2d 728, 731 (5th Cir. 1989), *cert. denied*, 498 U.S. 821 (1990); **United States v. Giarratano**, 622 F.2d 153, 156 n.4 (5th Cir. 1980). Nevertheless, the record is adequate for us to review the district court's finding.

In sum, we cannot conclude that the district court clearly erred by finding that the note created by Bollman was not obviously counterfeit. Accordingly, the court did not err by enhancing Bollman's base offense level under § 2B5.1(b)(2).

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*