UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-50630
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

THOMAS GREGG WYJACK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

May 7, 1998

Before WIENER, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:

Primarily at issue is whether, pursuant to an Application Note to U.S.S.G. § 2B5.1(b)(2), the use of a photocopying machine to produce counterfeit currency precludes applying that section's sentence enhancement, which mandates an offense level of 15 for use of a counterfeiting device. The Government appeals the sentence imposed on Thomas Gregg Wyjack, who pleaded guilty to three counts involving the counterfeiting, by use of a photocopying machine, of $20 Federal Reserve Notes. The sole issue presented is whether the district court erred by not increasing Wyjack's base offense level pursuant to § 2B5.1(b)(2). We **VACATE** and **REMAND** for resentencing.

Wyjack pleaded guilty to conspiracy to pass counterfeit Federal Reserve Notes, making fraudulent Federal Reserve Notes, and passing fraudulent Federal Reserve Notes, in violation of 18 U.S.C. §§ 371, 471, and 472. He admitted that he and a co-defendant purchased a color copier/printer and used it to produce counterfeit currency. The Presentence Report (PSR) calculated Wyjack's base offense level as 9, and recommended a two-level downward adjustment for acceptance of responsibility.

The Government objected to the PSR, asserting that, pursuant to U.S.S.G. § 2B5.1(b)(2), the base offense level should be 15. The district court overruled the Government's objection and sentenced Wyjack to 15 months imprisonment.

II.

At issue is whether the district court erred by failing to apply the § 2B5.1(b)(2) enhancement, which would have increased Wyjack's base offense level from 9 to 15. Section 2B5.1(b)(2) states:

> If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than 15, increase to 15.

In overruling the Government's objection to the PSR, the district court relied on the Application Notes for § 2B5.1, which provide, in pertinent part:

> Subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise

> produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny.

U.S.S.G. § 2B5.1, comment. (n.3). (Application Note 3 was re-numbered as Note 4 in the Guidelines that took effect on 1 November 1997. Wyjack was sentenced in June 1997, under the Guidelines in effect at that time.)

The Government contends that, under Application Note 3, the enhancement should be applied to cover photocopied counterfeit currency, *unless,* in the words of Note 3, the quality of such photocopied currency is so poor that it is "unlikely to be accepted [when] subjected to only minimal scrutiny". Wyjack counters that, under the plain meaning of Note 3, the enhancement does not apply to persons, such as himself, who merely photocopy notes. In the alternative, Wyjack contends that, even under the Government's interpretation, the enhancement is inapplicable because the notes he produced were obviously counterfeit.

We review the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *E.g.*, **United States v. Stevenson**, 126 F.3d 662, 664 (5th Cir. 1997). A sentence will be upheld on appeal unless it was "imposed in violation of law; imposed as a result of an incorrect application of the sentencing guidelines; or outside the range of the applicable sentencing guideline and is unreasonable." **United States v. Garcia**, 962 F.2d 479, 480-81 (5th Cir.), *cert. denied*, 506 U.S. 902 (1992). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it

violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

A.

Our court has not interpreted § 2B5.1(b)(2) or Application Note 3. The plain language of Note 3 gives considerable force to the reading urged by Wyjack and adopted by the district court. But, we agree with the Fourth, Sixth, Ninth, and Tenth Circuits, which have concluded that the enhancement contemplated by § 2B5.1(b)(2) applies to counterfeiters who produce instruments by photocopying, *unless* the instruments produced are so obviously counterfeit that they are unlikely to be accepted after only minimal scrutiny. *See* *United States v. Miller*, 77 F.3d 71, 75-76 (4th Cir. 1996); *United States v. Stanley*, 23 F.3d 1084, 1086 & nn. 1-2 (6th Cir. 1994); *United States v. Taylor*, 991 F.2d 533, 535 (9th Cir.), *cert. denied,* 510 U.S. 858 (1993); *United States v. Bruning*, 914 F.2d 212, 213 (10th Cir.), *cert. denied*, 498 U.S. 990 (1990).

The Tenth Circuit reasoned that the construction of Application Note 3 now being urged by Wyjack would protect the most successful of counterfeiters solely because their method of production was photocopying. *Bruning*, 914 F.2d at 213. The court stated further that exempting from application of the enhancement those counterfeiters whose method of production was photocopying would be inconsistent with the purposes of the enhancement, as set

forth in the background note to § 2B5.1.  *Id*.  That background

commentary states:

> Possession of counterfeiting devices to copy
> obligations (including securities) of the
> United States is treated as an aggravated form
> of counterfeiting because of the
> sophistication and planning involved in
> manufacturing counterfeit obligations and the
> public policy interest in protecting the
> integrity of government obligations.
> Similarly, an enhancement is provided for a
> defendant who produces, rather than merely
> passes, the counterfeit items.

U.S.S.G. § 2B5.1, comment. (backg'd).

In *Miller*, the Fourth Circuit adopted a two-part test for

determining the applicability of § 2B5.1(b)(2):

> First, the district court should determine
> whether the defendant "manufactured or
> produced any counterfeit obligation or
> security of the United States, or possessed or
> had custody of or control over a
> counterfeiting device or materials used for
> counterfeiting."  USSG § 2B5.1(b)(2).  If the
> answer to this question is no, the enhancement
> does not apply; if the answer is yes, the
> district court should then determine whether
> the notes "are so obviously counterfeit that
> they are unlikely to be accepted even if
> subjected to only minimal scrutiny."  USSG §
> 2B5.1, comment. (n.3).

*Miller*, 77 F.3d at 76.

Wyjack admitted to manufacturing or producing counterfeit

currency by photocopying it on a color copier/printer that he

possessed or had custody of or control over.  Accordingly, the

enhancement applies *unless* the notes produced were "so obviously

counterfeit that they were unlikely to be accepted even if

subjected to only minimal scrutiny".  U.S.S.G. § 2B5.1, comment.

(n.3).

- 5 -

At the sentencing hearing, the Government presented evidence regarding the quality of the counterfeit currency produced by Wyjack. A Secret Service Agent testified that all of the ten establishments (bars) to which the currency was presented had accepted it, although two establishments later realized that it was counterfeit. The Agent also acknowledged, however, that the ink would come off if the currency got wet; the PSR states that one of Wyjack's co-defendants attempted to eat a counterfeit bill prior to his arrest and it turned his tongue green.

The district court's ruling appears to rest solely on its interpretation of Application Note 3 as not applying to mere photocopying; the court stated that it was not deciding whether the counterfeit currency met the minimal inspection test. Because that determination is a factual finding, *see United States v. Bollman*, No. 97-40998, ___ F.3d ___ (5th Cir. 1998), rendered on the same day as this opinion, the district court should make that determination in the first instance.

In assessing the quality of the notes on remand, the district court may wish to consider, if applicable and appropriate, some or all of the following factors, as listed in *Miller*:

> (1) physical inspection during the trial or at the sentencing hearing; (2) whether the counterfeit notes were successfully passed; (3) the number of counterfeit notes successfully passed; (4) the proportion of the number of counterfeit notes successfully passed to the number of notes attempted to be passed; and (5) the testimony of a lay witness who accepted one or more of the counterfeit

> notes or an expert witness who testified as to the quality of the counterfeit notes.

*Miller*, 77 F.3d at 76.  This list is not exclusive, and no one factor should be dispositive.  *Id.*  A "far-reaching inquiry" is not necessary; instead, the district court should make "a common sense judgment on the quality of the counterfeit notes at issue".  *Id.*

### III.

For the foregoing reasons, Wyjack's sentence is **VACATED**, and the case is **REMANDED** for resentencing.

*VACATED and REMANDED*