**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Matthew Scott REVIS, Defendant–
Appellant.**

**No. 00–6037.**

United States Court of Appeals,
Sixth Circuit.

March 29, 2002.

Before JONES and MOORE, Circuit Judges; and HAYNES, District Judge.*

PER CURIAM.

Defendant Matthew Scott Revis ("Revis") was tried by a jury and convicted of counterfeiting U.S currency with intent to defraud and for aiding and abetting another person in passing counterfeited federal reserve notes. At sentencing, defendant challenged a presentence recommendation against reduction for acceptance of responsibility and for enhancement of sentence under the United States Sentencing Guidelines. The district court denied the challenges. Revis appeals the denial of reduction and the enhancement for counterfeiting. We affirm the district court's decision.

* The Honorable William J. Haynes, Jr., United States District Court Judge for the Middle District of Tennessee, sitting by designation.

## I. FACTS

On December 4, 1998, Revis used a Web–TV unit to download images of U.S. currency $50.00 bills from an Internet website called "ronscurrency.com." Defendant printed the images on standard white copy paper using an ink jet printer and trimmed the images to resemble actual currency. That afternoon, a friend of the defendant, Jimmy Ray Byrd ("Byrd"), visited Revis at his home so the two could smoke marijuana together. Revis traded Byrd two of the $50 bills for some of Byrd's marijuana.

On December 5th, Byrd passed one of the fake bills to a drive-thru attendant at a local Taco Bell.[1] The attendant took the "money" and gave Byrd change. About an hour later, Byrd tried to pass the other $50 bill at a Krystal Drive–Thru eatery but the "money" was refused and an employee called the police. Byrd was arrested for possession of a loaded shotgun, but was not arrested for the counterfeit currency. A few days later, Revis and Byrd then exchanged four more bills for marijuana, but Byrd destroyed these bills.

On December 8th, Secret Service Agent Darin Earle ("Earle") approached Byrd to obtain his cooperation. Earle asked Byrd to speak with Revis on the telephone while agents recorded the conversation. Earle also asked Byrd to meet Revis while wearing a wire and recording device and obtain more "bills" from him. On December 9th, during a recorded phone call, Byrd arranged to meet with Revis that day. The two agreed to exchange ten counterfeit $50.00 bills for more marijuana. Agents followed Byrd to the Revis residence where Revis gave Byrd ten additional notes. The entire exchange was recorded.

1. Revis was not with Byrd at the time that Byrd passed the counterfeit currency.

Approximately four hours later, Earle and other agents went to Revis's residence. The authorities obtained a consent to search from the defendant's mother. During the search, agents discovered marijuana, a pair of scissors, and paper trimmings consistent with those around the counterfeit currency. After being advised of his rights, Revis admitted making the counterfeit currency. He was cooperative and showed Earle the method he used for obtaining the images, the printer used to print the currency, and how the printed images were cut to make the "bills."

On October 27, 1999, Revis was indicted by a grand jury in a two-count indictment. Count One charged the defendant with making counterfeit obligations of the United States with intent to defraud in violation of 18 U.S.C. § 471. Count Two charged him with aiding and abetting Byrd in passing counterfeit federal reserve notes in violation of 18 U.S.C. §§ 472 and 2.[2] Revis was arrested on December 7, 1999 and pleaded not guilty. On March 30, 2000, the defendant was convicted on both counts in a jury trial.

A presentence investigation report ("PSR") was subsequently filed with the court. The PSR indicated that, although the defendant had cooperated with authorities, he had neither clearly demonstrated his acceptance of responsibility nor truthfully admitted the conduct comprising the offenses of conviction. The PSR also noted that the defendant had put the government to its burden of proof through trial because he believed he could convince the jury he was not guilty, rather than to preserve issues for a constitutional or other legal challenge. Therefore, the PSR recommended no reduction for acceptance of responsibility pursuant to U.S. Sentenc-

ing Guidelines (U.S.S.G.) § 3E1.1. The PSR also recommended an enhancement to the base sentence level from 9 to 15 per U.S.S.G. § 2B5.1(b)(2) because Revis had been involved in counterfeiting.

On July 10, 2000, the district court held a sentencing hearing. At the hearing, the defendant challenged the PSR recommendations. The court accepted the PSR recommendations and denied defendant's challenges. Specifically, the court held that the defendant was not entitled to the acceptance of responsibility reduction because he consistently professed a lack of guilt and took the government through its burden in a full jury trial. In addition, the court held that the defendant's sentence should be enhanced because the counterfeit items were sufficiently sophisticated to have passed for actual currency and did pass as currency. Revis contends that the court erred on both recommendations. Defendant timely appealed his sentence to this court.

## II. DISCUSSION

This court generally reviews the grant or denial of acceptance of responsibility under U.S.S.G. § 3E1.1 under the clearly erroneous standard, and will not overturn the same unless it is without foundation. *United States v. Childers*, 86 F.3d 562, 563 (6th Cir.1996). However, review is *de novo* where the only issue is the propriety of the reduction for acceptance of responsibility in light of uncontested facts; here we have no contested factual findings. *United States v. Tilford*, 224 F.3d 865, 867 (6th Cir.2000). This court reviews the factual determinations regarding the quality of counterfeit notes for clear error and reviews *de novo* the legal question of en-

---

**2.** Byrd was also named as a co-defendant in the indictment. On March 20, 2000, Byrd pleaded guilty to Count Two without a plea agreement and received a downward departure for his sentence.

hancement of sentencing under U.S.S.G. § 2B5.1(b)(2). *United States v. Stanley,* 23 F.3d 1084, 1085 (6th Cir.1994).

A. Acceptance of Responsibility

 Defendant argues that he should be entitled to the reduction for acceptance of responsibility. He claims such entitlement because he immediately cooperated with the Secret Service and voluntarily provided information about the equipment and manufacturing process used to produce the counterfeit items. Moreover, he claims that he should not be penalized for exercising his constitutional right to a trial by jury. Also, he contends that even though he had a complete jury trial and put the state to its full burden, he is still entitled to the reduction because he went to trial to challenge the applicability of the statute to his conduct. Thus, the defendant argues that the district court erred by not granting the reduction.

U.S.S.G. § 3E1.1(a) states in pertinent part that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." Defendant cites Application Note 1 to this section, and argues that he qualifies for reduction under either subsection (d) or (e). Subsection (d) provides qualification if the defendant voluntary surrenders to authorities promptly after commission of the offense. U.S.S.G. § 3E1.1 cmt. n. 1(d) (1999). Subsection (e) provides for qualification if the defendant provides voluntary assistance to authorities in the recovery of fruits or instrumentalities of the offense. *Id.* § 3E1.1 cmt. n. 1(e). Here,

defendant immediately advised the Secret Service agents as to his counterfeiting methods and equipment. He could not have promptly surrendered after "commission of the offense," however, because he has consistently denied that he ever committed an offense.[3]

Due to this consistent denial of guilt, Application Note 2 is also applicable to the defendant's action and provides sufficient independent justification for denial of a sentencing reduction. The commentary states that the acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* § 3E1.1 cmt. n. 2. Moreover, the targeted beneficiary of the provision is the defendant who accepts responsibility for his action and foregoes making the state spend its resources on an unnecessary trial. *See id.* Defendant's conduct does not show such acceptance and fits completely under this note. From his first interaction with the Secret Service through the end of a complete jury trial in which he was convicted on both counts, defendant has maintained that he has not violated the law regarding counterfeiting money because he says he never intended to defraud anyone with the money. As the defendant put the state to its burden with a full jury trial and has never acknowledged guilt, he does not qualify for the acceptance of responsibility reduction. We find no error in the district court's decision on this issue.[4]

---

3. Defendant argues that he never intended to defraud anyone when he made the counterfeit bills. He also argues that he never gave the "funny money" to anyone other than Byrd and that it was Byrd who committed the offense of passing counterfeit currency.

4. Defendant also argues that he qualifies under one of the limited exceptions in Application Note 2 because he went to trial to challenge the applicability of the counterfeiting statute to his conduct. The exception states:

Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare

## B. Enhancement for Counterfeiting

Defendant also argues that the district court erred by enhancing his sentencing level from 9 to 15 because he was involved in counterfeiting. Under the "Specific Offense Characteristics" for "Offenses Involving Counterfeit Bearer Obligations of the United States," the Guidelines state: "If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than 15, increase to level 15." U.S.S.G. § 2B5(b)(2). Defendant's base level is 9, however, he argues that his self-described "funny money" could not qualify as a "counterfeit obligation" because the Guidelines state under Application Note 4 that "subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." *Id.* § 2B5 cmt. n. 4. Defendant contends that his manufacturing method was unsophisticated. He further contends that his manufactured product was of such poor quality that anyone who examined the bills with even minimal scrutiny would immediately know that the bills were obviously counterfeit.

Following the application note, this court has held that the dispositive test as to whether the § 2B5(b)(2) enhancement applies is whether the reproduced notes were "so obviously counterfeit that they were unlikely to be accepted." *Stanley*, 23 F.3d at 1085. In a similar decision, a Tennessee district court also found that a defendant was subject to the enhancement provisions when he used the similar technology of a home personal computer, color printer and scanner to produce counterfeit notes, which were accepted as genuine by several store clerks. *United States v. Guffey*, 97 F.Supp.2d 842, 849 (E.D.Tenn.2000). In *Guffey*, the court succinctly described the threat of new technologies that were not recognizable when the Guidelines were produced:

> The use of, and access to, highly technical, sophisticated equipment capable of producing quality counterfeit no longer requires specialized training. Today's personal computers and the concomitant accessories have turned once difficult, time consuming tasks into quick and easy projects for even the least technology-savvy individual. The hardware is powerful, the software sophisticated, and the technology is, for the most part, user friendly. In addition computer equipment is widely available and relatively inexpensive. Although our technological growth has benefitted society enormously, these advances also unfortunately facilitate crimes such as counterfeiting and make their detection more difficult. Unlike the printing presses of the past, modern personal computers require no

situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or *a challenge to the applicability of a statute to his conduct*.) In each such instance, however, a determination that a defendant has

accepted responsibility will be based upon pre-trial statements and conduct. *Id.* § 3E1.1 cmt. n. 2 (emphasis added). It is the defendant's burden to prove acceptance of responsibility under the Guidelines. *See United States v. Crousore*, 1 F.3d 382, 386 (6th Cir.1993). Defendant has provided no legal argument or other evidence supporting his challenge of the applicability of the statute to his conduct and therefore has not met his burden.

specialized training or experience and individuals using a computer can easily make excellent quality counterfeit.

97 F.Supp.2d at 845–46. In that case, the defendant placed a $20 bill on a scanner, scanned the image to the computer hard drive, and then printed the note on a color printer. *Id.* at 846–47. The *Guffey* court found the defendant's methods to be "very sophisticated." *Id.* at 846. Based on this finding, the court held that the defendant's sentence was subject to the enhancement for counterfeiting. *Id.* at 849; *accord United States v. Bollman,* 141 F.3d 184, 187 (5th Cir.1998) (enhancement for counterfeiting appropriate when defendant went beyond mere photocopying and used a color scanner, color printer, computer equipment, computer software, and a personal computer to produce notes that were not obviously counterfeit).

In the instant case, the district court analogized Revis's conduct to the *Guffey* production method. In so doing, the court determined that Revis was even more sophisticated in his method of counterfeiting than the defendant in *Guffey.* Specifically, the court here found that Revis not only had to know how to use technology similar to that used by Guffey, but Revis was even more technologically savvy because his method required a working knowledge of how to access the Internet, download images from the Internet to his computer hard drive, and then manipulate the downloaded images with the computer software and printer to produce the notes.

We fully agree with the district court's determination in this case. Revis's use of advanced technology was a sufficiently sophisticated method to take it beyond mere photocopying. Moreover, the defendant's method produced notes that were not "so obviously counterfeit that they were unlikely to be accepted with only minimal scrutiny." In fact, the notes *were* accept-

ed, and probably with only minimal scrutiny as the bill was passed at a fast food restaurant drive-thru window. Therefore, we find no clear error in the district court's factual determinations on the quality of the counterfeit notes and hold that the sentencing enhancement for counterfeiting was appropriate.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the decision of the district court in full.