**UNITED STATES of America,**

v.

**Ronald L. STIVER, Appellant.**

**No. 01–4015.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 14, 2002.

Filed June 18, 2002.

---

Before ROTH, RENDELL, and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

Ronald L. Stiver was convicted in the United States District Court on a plea of guilty to passing and uttering counterfeit United States currency. The District Court enhanced his sentence under the United States Sentencing Guidelines by six offense levels. The court sentenced Stiver to an imprisonment of thirty-three months. He appealed, contending that the District Court misinterpreted the applicable guidelines and erroneously enhanced his offense level. We affirm.

### I.

Because the parties are familiar with the facts of this case, we need not recite them in detail. On April 13, 2001, Stiver pled guilty to passing and uttering counterfeit United States currency between December 14, 2000, and December 16, 2000, in violation of 18 U.S.C. § 472. Stiver and his codefendant Lawrence Miller bought a color copier from Staples to reproduce twenty-dollar bills. The counterfeit bills were cashed or used at various retail establishments in Chambersburg, Pennsylvania. The parties also stipulated that nine counterfeit twenty-dollar bills were recovered at different points in the stream of commerce.

Based on the offense level of 16 and criminal history category of IV, Stiver's sentencing range was 33–41 months of confinement. The District Court sentenced defendant to an imprisonment term of thirty-three months. All other applicable supervisory terms, fees, and monetary penalties were imposed. The District Court exercised subject matter jurisdiction under 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

U.S.S.G. § 2B5.1(a) establishes a base offense level of 9 for a violation of 18 U.S.C. § 472. However, § 2B5.1(b)(2) provides an increase to level 15 if "the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting." The defendant does not dispute that the six-level enhancement is applicable on its face because he either manufactured and produced counterfeit currency or possessed a counterfeiting device or materials—mainly, the photocopier and "antique paper" on which the counterfeit was produced. Rather, he argues that Application Note 4 to § 2B5.1 makes the enhancement inapplicable.

Application Note 4 to U.S.S.G. § 2B5.1 states: "Subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." On September 27, 2001, the District Court found the six level enhancement applicable and Application Note 4 inapplicable because the counterfeit notes were not so obviously counterfeit that they were unlikely to be accepted even if subjected to only minimal scrutiny.

Our review of the District Court's interpretation of the Guidelines is subject to plenary review. *United States v. Sharma*, 190 F.3d 220, 226 (3d Cir.1999); *United States v. Johnson*, 155 F.3d 682, 683 (3d Cir.1998). First, the defendant argues that the District Court committed legal error by focusing on the minimal scrutiny inquiry because that inquiry is irrelevant because he "merely photocop[ied] notes." The defendant argues that under the plain language of Application Note 4 to U.S.S.G. § 2B5.1, the enhancement under § 2B5.1(b)(2) does not apply if the counterfeit note was produced by "merely photocopy[ing]." In other words, he argues that the minimal scrutiny language only modifies the second clause — "otherwise produce items."

We need not belabor the issue. Like the United States Court of Appeals for the Fifth Circuit, we conclude that the plain language gives credence to the defendant's interpretation. *United States v. Wyjack*, 141 F.3d 181, 183 (5th Cir.1998). But, like it, we join the Fourth, Sixth, Ninth, and Tenth Circuits in rejecting the defendant's interpretation. *Wyjack*, 141 F.3d at 183; *United States v. Miller*, 77 F.3d 71, 75–77 (4th Cir.1996); *United States v. Stanley*, 23 F.3d 1084 (6th Cir.1994); *United States v. Taylor*, 991 F.2d 533, 535 (9th Cir.1993); *United States v. Bruning*, 914 F.2d 212 (10th Cir.1990). We rely substantially on the reasoning provided by these circuits, all of whom have concluded that Application Note 4 excludes from (b)(2) those defendants who produce notes, whether by photocopying or by other means, "that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." We, however, emphasize the reasoning of the Tenth Circuit, who stated that "the defendant's proposed reading ... would protect even the most successful counterfeiters from the enhanced penalties of subsection (b)(2) based solely on the method of production." *Bruning*, 914 F.2d at 213.

The defendants acknowledges that our holding has little effect hereafter because Application Note 4 has been amended effective November 1, 2001, to delete the "merely photocopy notes" language. The amended Application Note 4 reads: "Subsection (b)(2)(A) does not apply to persons who produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal

scrutiny." The defendant argues that the amendment's deletion of the language at issue demonstrates that the intent of the pre-amendment language was to exclude those people from the enhanced punishment that "merely photocopy notes."

The reason offered for the recent amendment, in relevant part, stated that "with the advent of digital technology, it cannot be said that photocopying necessarily produces a note so obviously counterfeit as to be impassible." Although the defendant's argument has some credence, we believe that the explanation given for the amendment further reinforces our conclusion. The explanation strengths our interpretation that the focus of Application 4 is not on the manner of production, but on the quality of the counterfeit item.

■ Next, the defendant argues that even if the inquiry was whether the counterfeit item was "so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny," that the District Court erred in its factual finding. The defendant argues that the District Court disregarded the opinion of a Secret Service Agent that the quality of the note was "poor" in reaching its finding. Further, he argues that the District Court seems to have misconstrued the number of counterfeit bills produced and how many still remained in circulation.

Our review of the District Court's factual findings is for clear error. *United States v. Hillstrom*, 988 F.2d 448, 450 (3d Cir.1993); *United States v. Holman*, 168 F.3d 655, 660 (3d Cir.1999). Under the clear error standard, "[f]actual findings are clearly erroneous if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." *United States v. Roman*, 121 F.3d 136, 140 (3d Cir.1997) (quoting *Davin v. DOJ*, 60 F.3d 1043, 1049 (3d Cir.1995)). The District Court's factual findings during sentencing cannot be disturbed unless this Court is "left with a definite and firm conviction that a mistake has been made." *Holman*, 168 F.3d at 660.

The District Court based its finding that the note was not of such poor quality that it would not be accepted on minimal scrutiny on two principal factors. First, it conducted a visual examination during sentencing. Second, the District Court observed that the counterfeit notes were accepted as legitimate currency by the people to whom the defendant gave them. They were accepted by various merchants as legitimate currency before they were eventually detected as counterfeit by either the store manager, banks, or an armored car service. Under these circumstances, we cannot conclude that the District Court erred, let alone clearly erred, in its factual finding.

In light of our disposition, we need not consider whether the District Court erred in finding, in the alternative, that Application Note 4 was also not applicable because in purchasing a copier, "antique paper," and successfully distributing the counterfeit notes, the defendant did more than "merely photocopy notes."

### III.

The judgment of sentence of the District Court is affirmed.