In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3251

United States of America,

Plaintiff-Appellee,

v.

Robert L. Baronia,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 702--Milton I. Shadur, Judge.

Argued February 21, 2002--Decided April 19, 2002

   Before Flaum, Chief Judge, and Harlington
Wood, Jr., and Williams, Circuit Judges.

   Williams, Circuit Judge.  Rather than
making money the old-fashioned way,
defendant Robert Baronia produced more
than $1,600 in counterfeit currency by
scanning the front and back of genuine
$1, $5, $10, and $20 bills onto his
computer. After scanning the bills, he
printed, cut, and crumpled them up to
give them an aged appearance. Though it
took him 15 attempts to correctly line up
the front and back of the bills, he
finally produced ones that were good
enough to fool employees at four
different commercial establishments
before arousing suspicion.

   After Baronia pleaded guilty to
counterfeiting in violation of 18 U.S.C.
sec. 471, the trial court found that the
counterfeit bills he produced were not
obvious forgeries and enhanced his
sentence pursuant to sec. 2B5.1(b)(2) of
the United States Sentencing Guidelines.
Baronia appeals his sentence, arguing
that the enhancement does not apply to
him because he was not a large-scale
producer and because the method he used
to produce the bills was unsophisticated.
We affirm.

ANALYSIS

According to the guideline in effect at the time Baronia was sentenced, the base offense level for violating 18 U.S.C. sec. 471 is 9, but is increased to 15 if the defendant "manufactured or produced" the counterfeit currency. U.S.S.G. sec.sec. 2B5.1(a) & (b)(2) (2000). The purpose of the enhancement is to punish more severely "a defendant who produces, rather than merely passes, the counterfeit items." U.S.S.G. sec. 2B5.1, cmt. background.

Baronia first argues that the word "manufacture" in subsection (b)(2) requires that a defendant be a "large scale" producer. Whether the district court properly interpreted the sentencing guideline is a question we review de novo. United States v. Mayberry, 272 F.3d 945, 948 (7th Cir. 2001). There is no reference to quantity in the language of subsection (b)(2), and we see no basis for inferring such a requirement. Subsection (b)(1) already provides for a level enhancement if the amount counterfeited is more than $2000, so it would be somewhat redundant to read subsection (b)(2) as providing an enhancement for producers of an undefined "large amount" of currency.

Baronia next argues that the subsection (b)(2) enhancement is intended to apply only to counterfeiters who use sophisticated methods to produce the counterfeit items. At the time of Baronia's sentence, the commentary to sec. 2B5.1 identified the following exception to the enhancement for certain counterfeiters:

Subsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny. U.S.S.G. sec. 2B5.1, cmt. n.4. Baronia reads Application Note 4 as exempting from the enhancement counterfeiters who either (1) produce fake bills by photocopying or (2) produce an obvious forgery by some other method. He does not contend that the bills he made were "obviously counterfeit." Instead, he argues that because his method of scanning the bills onto his computer was the functional equivalent of photocopying, section (b)(2) should not

apply.

We disagree with Baronia's reading of Application Note 4. We do not read the language as creating two separate and distinct situations in which section (b)(2) would not apply. The "obviously counterfeit" language in the note modifies and limits both the "merely photocopy" and the "otherwise produce" language, and therefore the note describes only one situation: when the method used by the counterfeiter produces an obvious forgery--whether by photocopying or some other method. See United States v. Stanley, 23 F.3d 1084, 1086 (6th Cir. 1994).

The proper inquiry for exclusion from subsection (b)(2) is not how the bills were made, but rather how well they were made. Under Baronia's reading, the counterfeiter who uses a photocopier is off the hook regardless of the quality of the counterfeit items. This reading conflicts with the purpose of the enhancement and has been rejected by every circuit to consider the question. See United States v. Wyjack, 141 F.3d 181, 183-84 (5th Cir. 1998); United States v. Miller, 77 F.3d 71, 76 (4th Cir. 1996); Stanley, 23 F.3d at 1086; United States v. Taylor, 991 F.2d 533, 535-36 (9th Cir. 1993); United States v. Bruning, 914 F.2d 212, 213 (10th Cir. 1990).

The purpose of the enhancement is to punish those who produce counterfeit items more harshly than those who simply pass the items. U.S.S.G. sec. 2B5.1, cmt. background. If the items are obviously counterfeit, there is less reason to punish that counterfeiter more severely because the items are unlikely to be accepted and the harm done by the producer is less. United States v. Barnes, 188 F.3d 893, 894 (7th Cir. 1999). A producer of obvious forgeries is also "more likely to be caught and so the punishment need not be so severe in order to maintain the proper level of deterrence." Id. at 894.

By contrast, the particular technology used to make the counterfeit items may, but will not always, directly correlate with the likelihood of detection. A relatively primitive method may produce a good imitation; a sophisticated method

might produce an obvious fake. It would be arbitrary and unreasonable to apply the lighter sentence to certain defendants simply because they happen to use photocopiers. See Bruning, 914 F.2d at 213.

As further support for his argument, Baronia points to a recent amendment to Application Note 4 (which took effect after he was sentenced), which removes the "merely photocopy" language from the application note, but we think the amendment and the accompanying commentary conclusively rebuts his interpretation. See Amendment 618, U.S.S.G. app. C supp. (Nov. 1, 2001). In its explanation for the amendment, the Commission acknowledged that language in the earlier commentary to sec. 2B5.1 suggested "that [section (b)(2)] did not apply if a defendant 'merely photocopies.'" Id. It explained, however, that "that commentary was intended to make [section (b)(2)] inapplicable to notes that are so obviously counterfeit that they are unlikely to be accepted." Id. The amendment and explanation not only eliminate Baronia's argument for cases arising under the amended guideline, it also demonstrates that his argument was contrary to the Commission's intent to begin with.

CONCLUSION

The court's enhancement of Baronia's sentence pursuant to section (b)(2) was proper and the sentence is therefore Affirmed.