In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-4120 & 02-1356

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHAD HUGHES and GARY BOVEY,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 00 CR 151—**Rudy Lozano**, *Judge.*

ARGUED SEPTEMBER 5, 2002—DECIDED NOVEMBER 13, 2002

Before COFFEY, RIPPLE and MANION, *Circuit Judges.*

RIPPLE, *Circuit Judge.* A four-count indictment charged Chad Hughes and Gary Bovey with various offenses involving the production and distribution of counterfeit United States currency. Count I alleged that both individuals had conspired to make and to pass counterfeit currency; Count II alleged that both individuals had made counterfeit currency; and Counts III and IV charged them with passing counterfeit currency. After a jury trial, Mr. Hughes was convicted on all counts; he was sentenced to concurrent terms of 18 months' imprisonment on each count. Mr. Bovey was convicted on Counts I, II and III;

he was sentenced to concurrent terms of 27 months' imprisonment on each count. A fine also was imposed on Mr. Hughes, and a period of supervised release and restitutionary obligations were imposed on each defendant. Both defendants now appeal to this court. For the reasons set forth in the following opinion, we affirm the judgments entered by the district court.[1]

# I

# BACKGROUND

According to the Government's case at trial, Mr. Hughes and Mr. Bovey began producing counterfeit United States currency during 1996 or 1997. The pair produced the counterfeit bills with a Hewlett Packard ink jet printer that Mr. Bovey had stolen from an office supply store. Mr. Hughes and Mr. Bovey used bonded paper as well as colored ink to produce the bogus currency. At least one individual, Chris Ward, witnessed both defendants produce the fake bills.

In February 2000, Mr. Hughes and Mr. Bovey passed several counterfeit bills to unsuspecting merchants in the West Lafayette, Indiana area. For instance, Mr. Hughes paid for two purchases at a local tavern with counterfeit one hundred dollar bills. He also passed a counterfeit twenty dollar bill to a sales clerk at a Target store.

An investigation into the forged bills led authorities to Mr. Hughes and Mr. Bovey. When the investigators first contacted them about the counterfeit bills, both defendants indicated that they had not passed fake one hun-

---

[1] The jurisdiction of the district court was based on 18 U.S.C. § 3231. Our jurisdiction is based on 28 U.S.C. § 1291.

dred dollar bills on the days in question. These statements further strengthened the investigators' suspicions because, during these interviews, they had not mentioned the denomination of the phony currency. A grand jury returned a multi-count indictment against Mr. Hughes and Mr. Bovey for their involvement in the production and distribution of counterfeit currency.

## II

## DISCUSSION

### A. Mr. Hughes

#### 1.

Prior to trial, Mr. Hughes moved to dismiss the indictment on the ground that the first count was duplicitous because it charged him with conspiring to make and to pass counterfeit currency. In his view, this allegation comprised two separate crimes and therefore should not have been included in a single count. The district court denied the motion. The court reasoned that a conspiracy, even one with multiple illicit objectives, constitutes a single crime.

Before this court, Mr. Hughes again submits that the first count of the indictment contained duplicitous charges. In his view, the district court should have dismissed this count of the indictment. "'Duplicity' is the joining of two or more offenses in a single count." *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996). "The overall vice of duplicity is that the jury cannot in a general verdict render its findings on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir. 2001) (internal quotations omit-

ted). A duplicitous indictment also "may expose a defendant to other adverse effects including improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing . . . and of course the danger that a conviction will result from less than a unanimous verdict." *Id.* at 425 (internal quotations omitted).

Count I of the indictment alleged that the defendants had conspired to make and to pass counterfeit bills in violation of the federal conspiracy statute, 18 U.S.C. § 371. As Mr. Hughes notes, making counterfeit bills alone constitutes a federal crime; passing such counterfeit currency also constitutes a federal crime. *See* 18 U.S.C. § 471 (unlawful to counterfeit obligations); 18 U.S.C. § 472 (unlawful to pass falsely made counterfeit obligations).

Count I of this indictment, however, did not charge Mr. Hughes with either of these violations. Rather, the first count alleged a single criminal activity—conspiracy to commit an offense against the United States. To be sure, the indictment alleges that this single conspiracy had two illicit objectives, each of which constitutes a crime. However, as the Supreme Court has observed: "A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute." *Braverman v. United States*, 317 U.S. 49, 54 (1942); *see also United States v. Bruun*, 809 F.2d 397, 405-06 (7th Cir. 1987). Consequently, "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects." *Braverman*, 317 U.S. at 54 (internal quotations omitted); *see also Bruun*, 809 F.2d at 406.

We have recognized that when "several statutes are alleged as the objective of a conspiracy," the Government need only establish that the defendant's illicit objective involved "one of those statutes to convict." *United States v. Muelbl*, 739 F.2d 1175, 1183 (7th Cir. 1984). However, when several different crimes are the object of a single conspiracy, a jury possibly could find a defendant guilty of conspiracy even though the jurors do not agree on which crime was the object of the conspiracy. As the Government points out, however, the instructions concerning Count I given to the jury in this case told the jurors that, in order to convict Mr. Hughes on Count I, they had to agree unanimously that the defendants conspired to make counterfeit money; or that they conspired to pass counterfeit money; or that they conspired to do both.[2] Accordingly, the instructions negated any possibility that Mr. Hughes was convicted on the basis of a non-unanimous verdict.

---

[2] Mr. Hughes also submits that the district court should have given instructions that would have required the jury to make explicit whether they found him guilty of conspiring to pass counterfeit bills or conspiring to make counterfeit bills. He submits that this specific finding was required before the district court could set his base offense level under the Sentencing Guidelines. The Guidelines indicate that, in setting the base offense level for conspiracy, the district court should turn to the base offense level of the substantive offense. *See* U.S.S.G. § 2X1.1. In this case, U.S.S.G. § 2B5.1 provides a base offense level of nine for passing or making counterfeit currency. Although it is true that the district court enhanced Mr. Hughes' sentence an additional six levels because it concluded that he had made the counterfeit currency, this determination did not raise the sentence above the statutory maximum. Consequently, this determination did not offend notions of due process. *Cf. Harris v. United States*, 122 S. Ct. 2406, 2414-15 (2002).

The district court correctly determined that Count I of the indictment was not duplicitous.

## 2.

Mr. Hughes also submits that the district court erred in calculating his sentence under U.S.S.G. § 2B5.1(b)(2). In calculating the respective sentences of Mr. Hughes and Mr. Bovey, the district court relied, in part, upon U.S.S.G. § 2B5.1(b)(2).[3] The defendants vigorously contested the applicability of this provision to their conduct. In particular, relying on Application Note 4 to this provision, Mr. Hughes and Mr. Bovey submitted that U.S.S.G. § 2B5.1(b)(2) did not apply to individuals who produced the counterfeit bills through photocopying. In rejecting this contention, the district court took the view that the defendants had read too narrowly this application note. The court held that the application note did not exempt those who had photocopied from § 2B5.1(b)(2)'s six-level enhancement; rather, it exempted from an enhancement those individuals who had made obvious forgeries. On appeal, relying on Application Note 4 of this provision, Mr. Hughes renews his assertion that U.S.S.G. § 2B5.1(b)(2) does not apply to his conduct because he produced the counterfeit currency through photocopying.[4]

Under the Sentencing Guidelines, an offense involving counterfeit currency of the United States mandates

---

[3] In general terms, this provision provides a six-level enhancement for an individual who (1) manufactured or produced a counterfeit obligation; or (2) possessed or had custody over a counterfeit device.

[4] Mr. Bovey raises an identical argument concerning § 2B5.1(b)(2).

a base offense level of 9. *See* U.S.S.G. § 2B5.1. "If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeit device or materials used for counterfeiting," the district court may increase the base level to 15 pursuant to U.S.S.G. § 2B5.1(b)(2). The guidelines create, however, a narrow exception to this enhancement embodied in § 2B5.1(b)(2). At the time of Mr. Hughes' sentence, the commentary to § 2B5.1 provided that § 2B5.1(b)(2) and its enhancement do not apply "to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." U.S.S.G. § 2B5.1, application n.4.[5]

However, contrary to Mr. Hughes' assertion, an individual's conduct is not removed from the ambit of § 2B5.1(b)(2) simply because he produced the counterfeit notes through photocopying. As we have explained, "[t]he 'obviously counterfeit' language in [Application Note 4] modifies and limits both the 'merely photocopy' and the 'otherwise produce' language, and therefore the [exception] describes only one situation: when the method used by the counterfeiter produces an obvious forgery—whether by photocopying or some other method." *United States v. Baronia*, 287 F.3d 607, 608 (7th Cir. 2002). Simply put, "[t]he proper inquiry for exclusion from [U.S.S.G. § 2B5.1(b)(2)] is not how the bills were made, but rather how well they were made." *Baronia*, 287 F.3d at 609.

---

[5] The current version of the Sentencing Guidelines makes no reference to photocopying. Application Note 4 now provides in its entirety that the enhancement "does not apply to persons who produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." U.S.S.G. § 2B5.1, application n.4.

The district court concluded that the notes were not "obviously counterfeit." Sentencing Tr. at 89. In reaching this conclusion, the court emphasized that none of the merchants rejected the counterfeit currency, that Mr. Hughes produced the fake notes on "heavier bonded paper, which made them very realistic," and that he produced the money with colored ink as opposed to black and white ink. *Id.*

Mr. Hughes used an ink jet printer and a copy machine to produce his counterfeit bills. However, as *Baronia* makes evident, that is not the dispositive inquiry in considering whether conduct falls within the ambit of Application Note 4. Because the district court concluded that the notes were not "obviously counterfeit," it did not err in calculating Mr. Hughes' base offense level under U.S.S.G. § 2B5.1(b)(2).

**B. Mr. Bovey**

**1.**

Before trial, Mr. Bovey moved to sever his trial from that of Mr. Hughes. Mr. Bovey submitted that he and his co-defendant intended to proceed with antagonistic defenses. After considering the parties' positions, the district court declined to grant the motion to sever. The court noted that Mr. Bovey simply had not demonstrated "the specific harm, prejudice or risk involved" in failing to sever the proceedings. R.113 at 9. Moreover, the district court emphasized that Mr. Bovey had failed to proffer evidence of the type that generally warranted severance.[6]

---

[6] Mr. Bovey renewed his motion to sever during trial. The district court again denied the motion.

Mr. Bovey now submits that the district court erred in denying his motion to sever his case from that of Mr. Hughes. He submits that the attempts of Mr. Hughes' counsel to shift blame to him through argument and cross-examination, combined with the references to Mr. Bovey's previous odometer tampering, severely prejudiced his right to receive a fair trial. We review a district court's denial of a motion to sever for an abuse of discretion. *See United States v. Wilson*, 237 F.3d 827, 835 (7th Cir. 2001).

To promote efficiency and to prevent "the scandal and inequity of inconsistent verdicts," the federal judicial system has adopted a preference for "joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations omitted). "[A] district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539; *see also Wilson*, 237 F.3d at 835. For instance, in certain circumstances, the complexity of the charges, the spillover effect of testimony the Government offers against a co-defendant or the prospect of issues implicating the holding of *Bruton v. United States*, 391 U.S. 123 (1968),[7] may warrant a severance. *See Zafiro*, 506 U.S. at 539.

---

[7] In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that, as a general matter, the Sixth Amendment forbids the admission of a co-defendant's confession inculpating the defendant unless the co-defendant takes the stand, because the defendant would be robbed of his right to confront and cross-examine witnesses against him.

However, to establish on appeal that severance ought to have been granted, a defendant must demonstrate "that the joint trial resulted in actual prejudice." *United States v. Mohammad*, 53 F.3d 1426, 1431 (7th Cir. 1995). "Actual prejudice means that the defendant could not have a fair trial without severance, not merely that a separate trial would offer him a better chance of acquittal." *Id.* (internal quotations omitted). The fact that defenses are mutually antagonistic[8] does not require severance in all instances. "Mutually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538.

The district court's denial of the motion to sever was not an abuse of discretion. Mr. Bovey has failed to demonstrate that the district court's ruling compromised one of his trial rights and actually prevented him from obtaining a fair trial. In his pretrial motion for severance, Mr. Bovey noted that earlier motions filed on behalf of his co-defendant, Mr. Hughes, indicated that Mr. Hughes' defense would be that he received the counterfeit material from Mr. Bovey and did not realize that the currency was counterfeit. Moreover, during opening statement, Mr. Hughes' counsel undoubtedly attempted to shift culpability from his client to Mr. Bovey.[9] However, these actions

---

[8] "Defenses are said to be mutually antagonistic when the acceptance of one defense precludes any chance of acquittal for the other defendant." *United States v. Dimas*, 3 F.3d 1015, 1020 (7th Cir. 1993) (per curiam).

[9] Specifically, Mr. Hughes' counsel asserted that Mr. Bovey had paid Mr. Hughes $500 in satisfaction of a debt and that Mr. Hughes passed this money without knowing it was counterfeit. *See* Trial Tr. at 15-16.

(continued...)

cannot be said fairly to have compromised one of Mr. Bovey's trial rights. Mere "finger-pointing" at another defendant, such as occurred here, is not sufficient to require severance. *See United States v. Mietus*, 237 F.3d 866, 874 (7th Cir. 2001); *United States v. Goines*, 988 F.2d 750, 781 (7th Cir. 1993). Moreover, Mr. Bovey's counsel had an opportunity to examine the witnesses who proffered the accusatory testimony. Other than his conclusory allegations, Mr. Bovey has proffered no evidence that the conduct of Mr. Hughes' counsel actually prejudiced his ability to obtain a fair trial.[10] Mr. Bovey has not pointed to any particular trial right that was compromised by the refusal to sever. Nor can we discern any serious risk that

---

[9] (...continued)

Counsel for Mr. Hughes also elicited testimony from witnesses concerning Mr. Bovey's role in an odometer tampering scheme. *See infra* II.B.2. However, it should be noted that this testimony was elicited after Mr. Bovey moved for a severance. As a general rule, "review of the trial court's exercise of discretion in refusing a motion for severance must be based on the state of the record at the time of the motion." *United States v. Oglesby*, 764 F.2d 1273, 1275 (7th Cir. 1985) (internal quotations omitted).

[10] Furthermore, Mr. Bovey rests the brunt of his argument on a misinterpretation of *Oglesby*. In *Oglesby*, this court noted that severance may be warranted if "a co-defendant's statement inculpating the moving defendant" was introduced at trial. *Oglesby*, 764 F.2d at 1276. However, based on the citation following this statement, it is evident that the court was referring to *Bruton* type problems—a situation absent in the present case. Moreover, Mr. Hughes never testified in this case. Mr. Bovey instead submits that the actions of Mr. Hughes' counsel functioned as though Mr. "Hughes himself had testified." Bovey Br. at 9. The record simply does not support such a conclusory allegation.

the jury was prevented "from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

**2.**

Mr. Bovey further submits that the district court abused its discretion in permitting the Government to present evidence under Federal Rule of Evidence 404(b) concerning his involvement in an odometer tampering scheme with Mr. Hughes.

Prior to trial, the Government served a timely notice of its intent to offer evidence under Rule 404(b). The Government noted that it intended to introduce testimony concerning the joint participation of Mr. Bovey and Mr. Hughes in an odometer tampering scheme. Over Mr. Bovey's motion to exclude the testimony, the district court allowed the Government to introduce this evidence to demonstrate that Mr. Hughes and Mr. Bovey had a working relationship with one another.

Before us, he submits that the prejudicial impact of this evidence far outweighed its probative value. In response, the Government emphasizes that this evidence demonstrated that Mr. Hughes and Mr. Bovey, the alleged co-conspirators, enjoyed a working relationship.

In a criminal prosecution, the Government may not tender evidence of prior misconduct merely to demonstrate "that a defendant has a propensity to commit crime and that he acted in conformity with that propensity on the occasion in question." *United States v. Best*, 250 F.3d 1084, 1090 (7th Cir. 2001). However, it may present such evidence for other purposes such as to demonstrate " 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.' " *United States v. Conley*, 291

F.3d 464, 472 (7th Cir. 2002) (quoting Fed. R. Evid. 404(b)). Consequently, the central inquiry in cases involving admission of evidence under Rule 404(b) becomes whether the material is " 'probative of a material issue other than character.' " *United States v. Heath*, 188 F.3d 916, 920 (7th Cir. 1999) (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)).

Although this court has adopted a four-prong test to determine if evidence may be admitted properly under Rule 404(b),[11] the parties' dispute concerns only the fourth element of this inquiry: whether the probative value of the material was substantially outweighed by the danger of unfair prejudice. *See Heath*, 188 F.3d at 919; *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999). Under this inquiry, " 'the general rule is that the balance should be struck in favor of admission.' " *United States v. Denberg*, 212 F.3d 987, 993 (7th Cir. 2000) (quoting *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980)). Moreover, this court has stated that "evidence is unfairly prejudicial only if it will 'induce the jury to decide the case on an improper basis, commonly an emotional one,

---

[11] Evidence is admissible under Rule 404(b) provided: (1) the evidence is directed towards a matter other than the defendant's propensity to commit the crime charged such as motive, intent, plan, knowledge or identity; (2) the evidence is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar acts; and (4) the probative value is not substantially outweighed by the danger of unfair prejudice. *See United States v. Heath*, 188 F.3d 916, 919 (7th Cir. 1999); *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999). Mr. Bovey does not challenge the district court's determination that prongs one through three have been satisfied in this case.

rather than on the evidence presented.'" *Conley*, 291 F.3d at 473 (quoting *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995)).

Although the issue is a relatively close one, we cannot say that the district court abused its discretion in admitting the evidence. The disputed information was relevant to the issue of whether Mr. Hughes and Mr. Bovey had a working relationship prior to the commission of this crime, a matter that might have been of some interest to the jury in light of the finger-pointing that took place between the defendants. *Cf. United States v. Macias*, 930 F.2d 567, 572 (7th Cir. 1991) (holding that Rule 404(b) evidence is "highly probative to show the working relationship" between drug dealers). The introduction of this evidence no doubt cast Mr. Bovey in an unflattering light. However, odometer tampering does not carry with it such a stigma that this material would provoke a jury to convict based on emotion rather than on the evidence. Moreover, when material concerning the odometer tampering was introduced at trial, the district court admonished the jury that it only could consider this evidence for the limited purpose of determining whether there was a working relationship between Mr. Hughes and Mr. Bovey. Consequently, the district court did not abuse its discretion in admitting this evidence under Rule 404(b).

## Conclusion

The district court correctly determined that Count I of the indictment was not duplicitous. The court also was on solid ground when it denied the motion to sever. The court did not abuse its discretion in permitting the introduction of the evidence of odometer tampering. Nor did the court err in its application of § 2B.1(b)(2) of the Sentencing Guidelines.

Accordingly, the judgments of the district court are affirmed.

AFFIRMED

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*