# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-2099 & 09-2716

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLARENCE E. PLATO and BISHOP C. GRAHAM,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 3:07-CR-30115—**Jeanne E. Scott**, *Judge.*

ARGUED APRIL 19, 2010—DECIDED DECEMBER 22, 2010

Before BAUER and SYKES, *Circuit Judges,* and GRIESBACH,
*District Judge.*\*

SYKES, *Circuit Judge.* Clarence Plato and Bishop Graham
were jointly tried and convicted by a jury of distributing
crack cocaine in violation of 21 U.S.C. § 841(a)(1). Law-

---

\* The Honorable William C. Griesbach of the United States
District Court for the Eastern District of Wisconsin, sitting
by designation.

enforcement officers caught the pair on videotape selling crack cocaine to a confidential informant inside a car parked at a restaurant in Springfield, Illinois. Graham raises two issues on appeal. First, he argues that his trial should have been severed from Plato's because Plato's counsel repeatedly argued to the jury that Graham was guilty. He also challenges the district court's decision to let the jury see a slow-motion replay of the surveillance video that captured the sale. Plato's counsel has moved to withdraw from representation and submitted an *Anders* brief explaining why all possible grounds for appeal are without arguable merit.

We affirm Graham's conviction. His argument for separate trials is waived because he failed to renew his pretrial motion for severance at the close of the evidence. Waiver aside, the argument is meritless; antagonistic defenses do not necessarily require severance. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). Rather, Graham must show that the joint trial deprived him of a specific trial right, and he cannot do so. Moreover, the district court did not abuse its discretion by replaying—in slow motion—the surveillance video of the drug sale. Finally, we agree with Plato's counsel that there are no nonfrivolous appellate arguments available to him. Accordingly, we grant counsel's motion to withdraw and dismiss Plato's appeal.

## I. Background

In July 2007 law-enforcement officers in Springfield, Illinois, began investigating Plato for dealing crack co-

caine. Under the direction of federal agents, a confidential informant contacted Plato to arrange a controlled drug buy. In a series of recorded phone calls, Plato agreed to meet the informant on July 13, 2007, at the Spaghetti Warehouse restaurant in Springfield. The informant met Plato in the restaurant's parking lot. The informant was carrying more than $1,700 in marked bills and wore an audio- and video-recording device. Plato and the informant got into a black Dodge Charger. Bishop Graham was seated in the driver's seat.

The parties disagree about what happened next. The trial testimony of the informant, which the jury evidently believed, was that Graham handed him the drugs and he gave Graham the cash in return. No one disputes, however, that the informant emerged from the car moments later with approximately 63 grams of crack cocaine. The entire exchange was captured on video surveillance. The police tailed Graham out of the parking lot and eventually pulled him over for making a left turn without signaling. Plato was no longer in the vehicle; the only other occupant was Graham's companion, a Ms. Chapman. Graham advised the police that his driver's license had been revoked, and he was taken into custody. The police found the $1,700 in marked buy money in Ms. Chapman's purse.

Plato and Graham were indicted jointly on one count of distributing 50 or more grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Plato agreed to cooperate with the police and participate in a controlled drug sale. The cooperation agreement eventually fell

through, but not before Plato had made incriminating statements about the July 13 sale with Graham. Both defendants pleaded not guilty and were set to be tried together. Graham filed a motion for severance on the ground that the government would likely use Plato's statements to the police, and if Plato did not testify, this would violate Graham's Sixth Amendment right to confront the witnesses against him. *See Bruton v. United States*, 391 U.S. 123 (1968). The government agreed not to use Plato's incriminating statements at trial but reserved the right to use them at sentencing. In light of the government's stipulation not to introduce Plato's statements at trial, the district court denied the severance motion. A three-day jury trial ensued.

The trial naturally focused on the exchange that took place in the Dodge Charger in the Spaghetti Warehouse parking lot. Both defendants stipulated that Graham was the person in the driver's seat and Plato was the person in the passenger's seat in the surveillance video of the transaction. Despite his presence in the car during the sale, Graham maintained that he was an innocent bystander. He testified that the informant placed the cash in the car's center console, and Plato motioned to him to take it, which he did. Graham said that he believed Plato was paying him for some tires and rims, and that he was unaware of any drug sale and had no idea why the informant was giving Plato such a large sum of money. Graham's attorney argued in closing that Plato arranged the drug sale and Graham had unwittingly provided transportation. Graham also attacked the credibility of the government's informant.

Plato did not testify at trial. His defense was simple and it took direct aim at Graham: Graham had arranged and executed the drug sale, and Plato had nothing to do with it. Plato's counsel argued in no uncertain terms that Graham was guilty, and Graham claims on appeal that these statements compromised his right to a fair trial.[1] At the close of the evidence, however,

_____

[1] The statements by Plato's defense counsel that Graham finds objectionable include:

> So at the end of this I'm going to make a request, same request [the government] made in part. I'm going to ask you to find Mr. Graham guilty. He had the dope, you will see it.

> \* \* \*

> [The arresting officer] did a great job, caught Mr. Graham flat out. Bingo, buddy. No question about it. The question is, do they throw out the net and also pull in the wrong people, Mr. Plato.

> \* \* \*

> [W]hen you have all the information in front of you, you're going to see that a dope transaction took place July 13th, 2007. . . . The person who owned the dope was Bishop Graham. That the person that controlled the transaction was Bishop Graham. And that [Plato] was in the wrong place at the wrong time . . . .

> \* \* \*

> It seems to me that there is a fairly simple decision you have to make. Who's lying? Is Mr. Plato lying or is Mr. Graham lying. Is Mr. Plato the person who distributed

(continued...)

Graham's counsel did not renew his earlier motion to sever.

The judge instructed the jury that each defendant should be considered separately.[2] The judge also told jurors that if they wanted to review audio or video exhibits during deliberations, they would be brought back into the courtroom. During deliberations, the jury asked to see a slow-motion replay of a portion of the surveillance video—specifically, from the point at which the informant entered the car through the time he exited. Plato's counsel did not object. Graham's counsel agreed to the tape being replayed but objected to playing it in slow motion. The judge overruled Graham's objection, brought the jury back into the courtroom, and allowed the video to be replayed in slow motion. The jury then resumed deliberations and returned a guilty verdict for both defendants.

---

[1] (...continued)
the dope or is Mr. Graham the one who distributed the dope. Is Mr. Plato lying and he got the money or is Mr. Graham lying . . . .

[2] The court instructed the jury as follows: "Even though the defendants are being tried together, you must give each of them separate consideration. In doing this you must analyze what the evidence shows about each defendant. Each defendant is entitled to have his case decided on the evidence and the law that applies to that defendant." Graham proposed this exact instruction, which parallels the Seventh Circuit Pattern Criminal Federal Jury Instruction § 4.05.

After his conviction Plato objected to the government's use at sentencing of the incriminating statements he had made to the police. The court overruled the objection on the ground that Plato had breached his immunity agreement and then permitted the government to use the statements at sentencing. The court sentenced Graham to 292 months and Plato to 262 months. Both defendants appealed. Plato's attorney subsequently moved to withdraw and submitted a brief under *Anders v. California*, 386 U.S. 738 (1967), explaining why the appeal is frivolous. Plato accepted our invitation to respond. *See* Cir. R. 51(b). Oral argument was limited to Graham's appeal.

## II.  Discussion

### A.  Joint Trial

Graham argues that he was deprived of his right to a fair trial because his trial was not severed from Plato's. Although he moved for severance before trial, he did not renew his motion at the close of the evidence. The law in our circuit is clear: Failure to renew a motion to sever at the close of evidence results in waiver. *See, e.g., United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("According to our case law, unless a motion to sever is renewed at the close of the evidence, it generally is waived."); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006) (same). Graham attempts to skirt this clear rule by arguing that he is not appealing the denial of his pretrial motion to sever, but rather is arguing for the first time on appeal that he was denied

a fair trial because he and his codefendant were tried
jointly. This distinction, he says, means that his argu-
ment was only forfeited, not waived, and therefore
he gets the benefit of at least plain-error review. We
don't see how the distinction Graham attempts to draw
makes any difference. He can't get around the waiver
by simply switching theories on appeal about why sev-
erance was required. The waiver operates on the sever-
ance issue itself, not on individual arguments for why
severance was warranted. Even if we treat Graham's
appellate arguments for severance as wholly unrelated
to the basis for his pretrial severance motion, those ar-
guments would still be waived.

Even if not waived, Graham's objection to the joint
trial is meritless. Once the government voluntarily ex-
cluded Plato's statements incriminating Graham in the
drug sale, the Sixth Amendment confrontation problem
evaporated. Graham is left with a prejudicial-joinder
argument—that antagonistic defenses required severance.
*Zafiro v. United States*, 506 U.S. 534, however, forecloses
that argument. *Zafiro* expressly held that severance
is not required when codefendants present mutually
antagonistic defenses. *Id*. at 538. Since *Zafiro*, we have
consistently held that blame-shifting among codefen-
dants, without more, does not mandate severance. *See
United States v. Hughes*, 310 F.3d 557, 564 (7th Cir. 2002)
("Mere 'finger-pointing' at another defendant, such as
occurred here, is not sufficient to require severance.");
*United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001)
("Even a showing that two defendants have 'mutually
antagonistic defenses,' that is, that the jury's acceptance

of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right.") When codefendants blame each other, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. Severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.*

Here, Plato's attorney undoubtedly shifted the blame to Graham, and Graham returned the favor. (Graham's counsel need not have explicitly said that Plato was guilty for the defenses to be "mutually" antagonistic; the implication was obvious from Graham's counsel's argument that Plato arranged the deal while Graham merely provided transportation.) Nothing in this paradigmatic case of blame-shifting codefendants suggests a basis for severance. Any possibility for prejudice was cured by the district court's instruction to the jury to consider each defendant separately.

Beyond the doomed "antagonistic defenses" argument, Graham can point to no aspect of these proceedings that compromised a specific trial right or otherwise prevented the jury from making a reliable judgment about his guilt. *Zafiro*, 506 U.S. at 539. All of the evidence admitted in the joint trial would have been admissible against Graham had he been tried separately. Plato and Graham also had roughly equivalent levels

of culpability—they were convicted of the same offense
and both participated in the drug sale. Further, Graham
can point to no exculpatory evidence that he was barred
from introducing because of the joint trial. *See id.* (giving
examples of prejudice arising from a joint trial that
could potentially amount to the violation of a specific
trial right).

Graham does his best to fashion a Sixth Amendment
confrontation violation out of Plato's attorney's conduct.
Plato's attorney essentially became a testifying witness,
the argument goes, and because Plato himself did not
testify, Graham was deprived of his Sixth Amendment
right to confront Plato on the stand. Not so. The jury
was given the usual instruction that statements made
by the attorneys are not evidence and was also told that
if any statement by an attorney misstated the evidence,
it should be disregarded. The Sixth Amendment secures
a defendant's right to confront witnesses, not to con-
front attorneys who are simply presenting their client's
case.

Moreover, Plato's defense was arguably a reasonable
inference from the available evidence—albeit one that
the jury rejected. The informant testified that Graham
handed him the drugs and that he gave Graham, not
Plato, the money. Plus, the police found the buy money
in Graham's companion's purse after pulling the car
over. From this set of facts, the jury could infer that
Graham was guilty and Plato was just along for the
ride—and that was the argument made by Plato's attorney.

We have previously held that behavior far worse by
a codefendant's counsel in a joint trial does not mandate

severance. For instance, in *United States v. Hughes*, 310 F.3d at 563, the defendant claimed on appeal that his codefendant's counsel not only engaged in finger-pointing, but also improperly raised the defendant's prior acts of fraud. We held that this did not rise to the level of actual prejudice required for a new trial. *Id.* at 563-64. Graham identifies no comparable acts of misconduct on the part of Plato's attorney, let alone any that are more egregious. There was no constitutional violation.

In sum, this is not one of those "most unusual circumstances" where the "risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *Alviar*, 573 F.3d at 538 (citation omitted). The joint trial in this case made good sense. This was a one-and-done drug deal caught on video, and both defendants *admitted* they were in the vehicle during the sale. We find no error in the decision to try the defendants jointly.

## B. Replaying of Surveillance Video in Slow Motion

We review a district court's evidentiary rulings, including a jury's handling of exhibits during deliberations, for abuse of discretion. *United States v. Arroyo*, 406 F.3d 881, 886 (7th Cir. 2005) ("We afford the district court considerable discretion in the handling of exhibits during the course of a trial as well as during jury deliberations."). Graham argues that allowing the jurors to watch the surveillance video in slow motion in open court during jury deliberations amounted to a violation

of the Sixth Amendment. We cannot see how; the sur-
veillance video—the authenticity of which was unques-
tioned—had already been admitted into evidence and
played for the jury in its entirety. Graham had ample
opportunity to address the contents of the video
during trial, and his counsel discussed it at length in his
closing.[3] There is nothing unusual about jury requests
to more closely examine certain items of evidence
during deliberations, especially key evidence like a sur-
veillance videotape capturing the crime.[4]

   We have no prior cases raising the specific issue of a
*slow-motion* replay of surveillance video during jury
deliberations, but we have little trouble concluding that
the district court's handling of the matter was not an
abuse of discretion. We have previously approved of
a district court's decision to send tape recordings and a

---

[3] Ironically, the jury's request to watch the video in slow
motion may have been prompted, at least in part, by Graham's
attorney's closing argument. He argued that the video
showed that Graham did not participate in the drug sale
while he was seated in the car. "[I]n watching this videotape,"
counsel said in closing argument, "there were no real words
spoken by Bishop Graham. He never talked to [the informant]."
The jury's request to replay the video was a natural response
to this argument.

[4] In addition, Graham has pointed to no prejudice arising
from the replaying of the video in slow motion. When asked
at oral argument what he would have done had the video
been replayed in slow motion *before* the close of evidence,
Graham's attorney had no response.

tape player into the jury room during deliberations, and in that situation jurors could replay the tapes as often—or as slowly—as they liked. *United States v. Hofer*, 995 F.2d 746, 748-49 (7th Cir. 1993). In this case, we have even more safeguards—the jury was not given a video recorder to replay the video in the jury room, but instead viewed a portion of the video in the presence of the judge, the prosecutor, and the defense attorneys. Nothing about this violates the Sixth Amendment. The district judge was well within her discretion in granting the jury's request.

## C.  Plato's *Anders* Brief

Plato has responded to the *Anders* brief submitted by his counsel in support of the motion to withdraw.[5] Counsel states that he reviewed the record and also consulted with Plato over the phone, and has concluded that there is no nonfrivolous ground for appeal. We agree. We have already rejected two of the possible

---

[5]  An *Anders* brief should:

> (1) identify, with record references and case citations, any feature of the proceeding in the district court that a court or another lawyer might conceivably think worth citing to the appellate court as a possible ground of error; (2) sketch the argument for reversal that might be made with respect to each such potential ground of error; and (3) explain why he nevertheless believes that none of these arguments is nonfrivolous.

*United States v. Edwards*, 777 F.2d 364, 366 (7th Cir. 1985).

issues counsel has identified: the joint trial and the slow-
motion surveillance-video replay. Moreover, on these
issues Plato has additional obstacles to appellate review;
unlike Graham, he *never* moved for severance—either
before trial or at the close of the evidence—nor did
he object to replaying the video, in slow motion or other-
wise.

The third potential ground of error is also easily rejected:
There was ample evidence of Plato's guilt, even though
he did not personally handle the drugs or receive the
buy money. Section 841(a)(1) of Title 21 of the U.S. Code
makes it unlawful "to . . . distribute . . . a controlled
substance." "[T]o distribute" means "to deliver," and
"delivery" is defined as "the actual, constructive, or
attempted transfer of a controlled substance . . . whether
or not there exists an agency relationship." 21 U.S.C.
§ 802(8) and (11); s*ee United States v. Sachsenmaier*,
491 F.3d 680, 684 (7th Cir. 2007) (rejecting defendant's
argument that he did not distribute drugs because he
did not physically hand them to buyer). That Plato
did not physically hand over the drugs is of no conse-
quence. The evidence plainly supports Plato's role as
a principal in the constructive distribution of a con-
trolled substance.

Finally, we agree with counsel that any challenge to
Plato's sentence would be frivolous. The judge prop-
erly relied on Plato's incriminating statements to law-
enforcement officers in finding that Plato could be
held responsible for 1.49 kilograms of crack cocaine.
Further, Plato's sentence of 262 months—at the low end

of the correctly calculated guidelines range—was not unreasonable.

Accordingly, we AFFIRM Graham's conviction. We GRANT Plato's counsel's motion to withdraw and DISMISS Plato's appeal.