In the

# United States Court of Appeals

## For the Seventh Circuit

---

Nos. 13-2649, 13-3523

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GWENDOLYN JACKSON and
LATONJA SPENCER,

*Defendants-Appellants.*

---

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division
Nos. 1:08-cr-00453-4, 1:08-cr-00453-12 — **James B. Zagel**, *Judge.*

---

ARGUED FEBRUARY 20, 2015 — DECIDED JUNE 3, 2015

---

Before RIPPLE, KANNE, and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Gwendolyn Jackson and Latonja Spencer were convicted in the United States District Court for the Northern District of Illinois on charges arising out of a scheme to defraud mortgage lenders. The district court sentenced Ms. Jackson to 112 months' imprisonment and Ms. Spencer to 36 months' imprisonment. Both defendants now appeal their respective convictions and sentences. For

the reasons set forth in this opinion, we vacate Ms. Jackson's sentence and remand for resentencing. In all other respects, we affirm the judgments of the district court.

# I

## BACKGROUND

### A.

Ms. Jackson and Ms. Spencer participated in a scheme to defraud various Chicago-area mortgage lenders from approximately August 2004 to May 2008. Bobbie Brown Jr. was the scheme's leader. Brown arranged with home builders and other sellers of newly constructed residences to receive finder's fees or commissions for locating buyers to purchase their properties at inflated prices. Using various businesses that he operated, including Chicago Global Investments, Inc. ("Chicago Global"), Brown then located nominee buyers willing to purchase the properties. To obtain financing for the purchases, the nominees were referred to loan officers, including Ms. Spencer, who fraudulently qualified the buyers for loans through false statements in loan applications and other documents submitted to lenders. Once a purchase was finalized, Brown and his coconspirators kept the surplus proceeds of the sale—that is, the inflated amount above what the seller was seeking.

As president and co-owner of Chicago Global, Ms. Jackson recruited nominee buyers to participate in the scheme. She and others also provided, and caused to be provided, funds for the real estate deals and falsely represented the nominees as the source of those funds. Ms. Jackson's partici-

pation in the scheme resulted in losses to mortgage lenders of approximately $8,515,570.

For her part, Ms. Spencer participated in the scheme through her job as a loan officer at Oxford Financial. As part of the scheme, she assisted Brown's nominee buyers in obtaining funding for twelve different fraudulent real estate transactions. Specifically, Ms. Spencer knowingly provided false information, including falsely inflated income amounts and job histories, to lenders so that the nominees would qualify for mortgages. Ms. Spencer's participation in the scheme resulted in losses to mortgage lenders of approximately $3,091,050.

### B.

On June 3, 2008, a grand jury returned a twenty-six count indictment against Ms. Jackson, Ms. Spencer, and nineteen other individuals, alleging that the defendants knowingly devised and participated in a scheme to defraud financial institutions and mortgage lenders. Ms. Jackson was charged with two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341. Ms. Spencer was charged with two counts of bank fraud, in violation of 18 U.S.C. § 1344, and two counts of mail fraud, in violation of 18 U.S.C. § 1341.

Ms. Jackson and Ms. Spencer, along with four of their codefendants, were tried together in a two-week jury trial. In the end, both defendants were convicted on all counts charged in the indictment. The district court sentenced Ms. Jackson to 112 months' imprisonment on each of her three counts, to be served concurrently, and ordered her to

pay $8,515,570 in restitution. As for Ms. Spencer, the court sentenced her to 36 months' imprisonment on each of her four counts, also to be served concurrently, and ordered her to pay $3,091,050 in restitution.[1] Both defendants timely appealed.[2]

## II

## DISCUSSION

Ms. Jackson and Ms. Spencer each challenge one aspect of the guilt phase of their trial. First, Ms. Jackson contends that the district court erred by excluding evidence of Brown's physical violence toward her. Ms. Spencer contends that the district court abused its discretion by failing to sever her trial from that of her codefendants. Both defendants also submit that the district court erred in applying a two-level obstruction-of-justice enhancement when calculating their respective sentences. We first will review the contentions from the guilt phase of the trial. Then we will review the sentencing phase.

### A.

We begin with Ms. Jackson's contention that the district court erroneously excluded evidence that Brown, with whom she had a personal relationship, abused her. We review the district court's evidentiary rulings for abuse of dis-

---

[1] The district court had jurisdiction under 18 U.S.C. § 3231.

[2] Our jurisdiction is premised on 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

cretion. *United States v. Khan*, 771 F.3d 367, 377 (7th Cir. 2014).

**1.**

At trial, Ms. Jackson sought to introduce a police report from November 12, 2007, detailing a domestic battery allegation that she had filed against Brown. The point of this evidence, according to Ms. Jackson, was to rebut testimony introduced by the Government that she and Brown were in a business relationship. As defense counsel explained, the police report was probative in this regard because "business partnerships and battery are opposites."[3]

The district court refused to admit the report. In doing so, the court rejected Ms. Jackson's contention that battery and business relationships are uncommon, stating that defense counsel "would have to have some expert witness come in and testify" to that fact.[4] Further, because the incident described in the report occurred approximately four months after the last real estate transaction in the case, the court determined it was irrelevant to Ms. Jackson's defense.

In response, defense counsel inquired whether Ms. Jackson could introduce evidence of Brown's abuse for a different purpose, namely, to corroborate her defense that she was unaware of Brown's fraudulent activities because she was afraid to confront him. The district court responded to this request in the affirmative:

[3] R.801 at 159.

[4] *Id.*

> If she wants to say that she didn't confront him because she was afraid of him, she's perfectly entitled to do that. I mean, absolutely. What she's not entitled to do is use a post-event incident as proof that she was right to fear him at the time, because it's a post-event incident.[5]

The next day, prior to Ms. Jackson's testimony, the following colloquy took place between the district court and defense counsel regarding the court's ruling excluding the November 2007 police report:

> MR. CAMARENA: … I just wanted to clarify so I don't violate Your Honor's order, just to be clear, Gwen Jackson can't testify about any physical abuse, is that right?
>
> THE COURT: That's right.
>
> MR. CAMARENA: Okay. And you mentioned earlier, or yesterday, you mentioned an expert and we couldn't produce that without a continuance.
>
> THE COURT: Right.
>
> MR. CAMARENA: Thank you, Your Honor.[6]

During her testimony, Ms. Jackson testified that Brown controlled her and her company and that she did not know the details of his fraudulent scheme because she was afraid

---

[5] *Id.* at 162.

[6] R.802 at 112.

to confront him. In particular, Ms. Jackson testified that Brown did not allow her to know the details of Chicago Global's business transactions and that he "would holler and scream" if she ever inquired about such information.[7] Notably, when asked whether she ever insisted on knowing more about the company's business transactions, Ms. Jackson responded, "For a while, and then—well, Bobbie—Bobbie is very intimidating, very intimidating. Bobbie Brown is 5-foot 9, 260 pounds, and ex-gang member."[8] Finally, on cross-examination, when asked why she continued to do business with Brown, Ms. Jackson responded that she "had been dealing with an abusive situation with him."[9]

Following the jury's verdict, Ms. Jackson filed two separate motions for a new trial. In both motions, she asserted that the district court had erred by excluding evidence of Brown's physical abuse toward her. The district court denied the motions. In doing so, the court concluded that Ms. Jackson's proffered evidence of abuse was inadmissible because it "failed for lack of a proper foundation as to time."[10] Further, the court noted that Ms. Jackson's defense—i.e., that she failed to confront Brown because she was afraid of him—"was admitted more than once as was her accusation that Brown was abusive."[11]

---

[7] *Id.* at 144.

[8] *Id.* at 145.

[9] *Id.* at 168.

[10] R.896 at 2.

[11] *Id.*

**2.**

On appeal, Ms. Jackson contends that the district court abused its discretion by precluding her from "presenting any evidence that [she] was the victim of physical and mental abuse at the hands of Bobbie Brown."[12] Such evidence, she maintains, was necessary to corroborate her defense that she was unaware of Brown's fraudulent activities because she feared challenging him. In response, the Government submits that the district court made no such ruling, but rather merely precluded Ms. Jackson from introducing a post-event police report in order to show that she and Brown were not in a business relationship.

We agree with the Government's assessment of the district court's order. The only evidence of Brown's physical abuse ever proffered by Ms. Jackson was the instance described in the November 2007 police report. The district court excluded that report as irrelevant to Ms. Jackson's mental state at the time of the offense. Aside from the report, the district court did not exclude any other evidence of Brown's physical abuse. Although the court later stated that Ms. Jackson could not testify about "any" physical abuse, we believe that those remarks, when read in context, refer only to the instances of abuse described in the November 2007 police report. Prior to those remarks, the record contains no mention of any other instance of physical abuse. The court's only stated reason for excluding the report was because it described a "post-event incident" of abuse.[13] Finally, and

---

[12] Appellants' Br. 24.

[13] R.801 at 162.

most importantly, Ms. Jackson testified at trial, without objection, that Brown was abusive, intimidating, and controlling. Under these circumstances, we decline to interpret the district court's order as excluding evidence beyond the November 2007 police report. Because the instance of abuse described in that report post-dated the last fraudulent transaction in the case, we cannot say that the court's decision to exclude it was an abuse of discretion. *Cf. United States v. Savage*, 505 F.3d 754, 761 (7th Cir. 2007) (concluding that district court did not abuse its discretion by excluding evidence of post-offense threats offered to support defendant's coercion defense).

## B.

Ms. Spencer contends that the district court erred by failing to sever her trial from that of her codefendants. We review a district court's denial of a defendant's request for severance for an abuse of discretion. *United States v. Del Valle*, 674 F.3d 696, 704 (7th Cir. 2012). Where, however, a defendant fails to renew a motion for severance at the close of evidence, we consider the issue waived. *See United States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010).

Severance under Federal Rule of Criminal Procedure 14 is required "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "[B]lame-shifting among codefendants, without more, does not mandate severance." *Plato*, 629 F.3d

at 650.[14] Rather, "[w]hen codefendants blame each other, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* at 651 (internal quotation marks omitted).

Ms. Spencer submits that the district court abused its discretion by failing to sever her trial from that of her codefendant, Edgardo Hernal. More precisely, Ms. Spencer contends that severance was warranted because her trial strategies and defenses were in direct conflict with Hernal's. The Government responds that Ms. Spencer waived this objection by failing to request severance in the district court and that, in any event, the district court's denial of severance was not an abuse of discretion.

We agree with the Government. First, there is no indication in the record that Ms. Spencer ever moved for severance in the district court. Although her codefendants, Jean and Edgardo Hernal, each individually moved to sever their trials from that of Ms. Spencer, there is no indication that Ms. Spencer ever joined in those motions. Accordingly, we consider this issue waived. *See id.* at 650.

---

[14] *See also Zafiro v. United States*, 506 U.S. 534, 538 (1993) (holding that severance is not required simply because codefendants present mutually antagonistic defenses); *United States v. Hughes*, 310 F.3d 557, 564 (7th Cir. 2002) ("Mere 'finger-pointing' at another defendant, such as occurred here, is not sufficient to require severance."); *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001) ("Even a showing that two defendants have 'mutually antagonistic defenses,' that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right.").

In any event, waiver aside, it is clear that the district court did not abuse its discretion by denying severance. On appeal, Ms. Spencer only offers one reason for requiring severance: because her defense strategy was "mutually exclusive" with that of Edgardo Hernal.[15] Severance, however, is not required simply because two codefendants present "mutually antagonistic defenses." *See Zafiro*, 506 U.S. at 538. Accordingly, the district court did not abuse its discretion by failing to sever Ms. Spencer's trial from that of her codefendants.

## C.

Both defendants contend that the district court erred in applying an obstruction-of-justice enhancement when calculating their respective sentences. When reviewing an obstruction-of-justice enhancement, we review the district court's factual findings for clear error and its conclusion that those findings support the enhancement de novo. *United States v. Cheek*, 740 F.3d 440, 453 (7th Cir. 2014).

The Sentencing Guidelines permit a two-level enhancement for obstruction of justice

> [i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's

---

[15] Appellants' Br. 29.

> offense of conviction and any relevant conduct;
> or (B) a closely related offense[.]

U.S.S.G. § 3C1.1. A finding that the defendant committed perjury is sufficient to justify the enhancement. *See United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014). "A defendant commits perjury if, while testifying under oath, she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Chychula*, 757 F.3d 615, 619 (7th Cir. 2014) (alterations omitted) (internal quotation marks omitted). "To apply the enhancement based on perjury, the district court should make a finding as to all the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent." *Riney*, 742 F.3d at 790 (internal quotation marks omitted).

## 1.

With these principles in mind, we turn first to Ms. Jackson's contention. The Presentence Investigation Report ("PSR") for Ms. Jackson recommended a two-level enhancement to her sentencing calculation for obstruction of justice pursuant to U.S.S.G. § 3C1.1. In particular, the PSR asserted that Ms. Jackson had obstructed justice by knowingly providing false testimony at trial.

When addressing this issue at sentencing, the district court determined, contrary to the PSR, that Ms. Jackson had not "deliberately or knowingly lied" while testifying:

> I heard you testify, I think what you said to me
> and testified to was not the truth. I am unwill-
> ing to add additional time to the fact that you

were untruthful, often untruthful, because it is possible for me to believe that you started with all of this by lying to yourself and perhaps coming to believe your lies to yourself. If I thought that the false testimony you gave me was something that you knew as you testified was a lie, the sentence would be more severe. People who lie to themselves, particularly in this kind of offense you committed, are fairly common. The ability to forget what you knew, the ability to blame some of your conduct on others, the ability to think that the trouble you caused people you love and people who are close to you is a good ground for me to forget the trouble you have caused many people who got entwined into this very substantial fraud over a very long period of time, but because I do not find that you are deliberately and knowingly—that you've deliberately or knowingly lied at trial or deliberately lied knowingly to me now.[16]

Following these remarks, defense counsel pointed out that the offense level the court was using to calculate Ms. Jackson's guidelines range still included an enhancement for obstruction of justice. In response, the district court stated, "If by raising the obstruction issue in light of what I have said about her lying to herself, I do not think lying to yourself excuses obstruction of justice."[17] The district court

---

[16] App. R.48 at 108–09.

[17] *Id.* at 110.

then proceeded to calculate Ms. Jackson's sentence using the two-level obstruction enhancement.

Ms. Jackson contends that the district court erroneously applied the obstruction enhancement in light of its finding that she did not "deliberately or knowingly lie[] at trial."[18] For its part, the Government concedes that the district court erred in applying the enhancement and that a remand is warranted for resentencing.

We agree with the parties' conclusion on this issue. The district court's finding that Ms. Jackson did not knowingly and deliberately lie during her testimony directly refutes one of the key elements required for perjury, namely, willful intent. The Government offers no other basis in the record warranting this enhancement. Accordingly, we conclude that Ms. Jackson's sentence should be vacated and her case remanded for resentencing.

## 2.

Ms. Spencer's PSR recommended a two-level obstruction enhancement based on the ground that she too had knowingly provided false testimony. In response, Ms. Spencer filed an objection to the PSR in which she asserted that just because the jury did not believe her testimony does not mean that she committed perjury.

At sentencing, the district court determined that Ms. Spencer's conduct warranted the enhancement. In particular, the court agreed with the Government that

---

[18] *Id.* at 109.

Ms. Spencer had lied when testifying that she did not knowingly provide false information to lenders. Although the court recognized that her testimony was "not a brilliant" or "particularly effective obstruction of justice," the court nonetheless determined "that she had, at the very minimum, shaded the truth" and "knew she was doing it."[19] Thus, the court concluded that the enhancement was warranted.

On appeal, Ms. Spencer's challenge to the district court's obstruction enhancement consists entirely of one sentence: "In consolidation, Ms. Spencer believes this argument [referring to Ms. Jackson's argument] pertains to the imposition of the obstruction enhancement for the same reasons and therefore adopts this argument."[20] As we have just discussed, Ms. Jackson's sentencing argument was premised entirely on the district court's finding that *she* did not deliberately or knowingly lie at trial. The district court made no such findings with regard to Ms. Spencer. Rather, it found exactly opposite: that she had "shaded the truth" and "knew she was doing it."[21] Thus, Ms. Jackson's sentencing argument is wholly irrelevant to Ms. Spencer's case. We must conclude that the district court did not err in applying the enhancement.[22]

---

[19] R.1169 at 7.

[20] Appellants' Br. 28.

[21] R.1169 at 7.

[22] To the extent that Ms. Spencer intended to challenge her sentence on a broader rationale, we consider any additional arguments on this issue waived. *See Perez v. Illinois*, 488 F.3d 773, 776–77 (7th Cir. 2007) ("[P]erfunctory and undeveloped arguments are deemed waived.").

## Conclusion

For the foregoing reasons, we vacate Ms. Jackson's sentence and remand for resentencing. In all other respects, we affirm the judgments of the district court.


AFFIRMED IN PART, VACATED AND REMANDED IN PART